## THE PEOPLE *vs.* HUGH WHITE.

The taking of private property for public use can only be justified by virtue of the sovereign right of eminent domain.

Before the organization of our government, this right was exercised throughout the civilized world, and its exercise restricted to cases of public necessity and just compensation.

The provisions on this subject in the constitutions of the United States, and of the state of New-York, are only declaratory of a previously existing universal principle of law.

Where land belonging to a citizen was taken under the act of 1819, for the construction of the Erie canal, and used as the bed of the canal for a number of years, and was afterwards abandoned by the state, and the canal located in a different place; *Held* that such land, when no longer necessary for public use, reverted to the original owner, although the act under which it was taken declared it should vest in the state, in fee simple.

THIS was a case submitted to the court, by the parties, for its decision, without action, under section 372 of the code, upon the following statement of facts : In 1819 the canal commissioners, under and by virtue of, and in conformity with, an act of the legislature, passed on the 7th of April, 1819, entitled "An act concerning the great western and northern canals," in behalf of the state entered upon and took possession of a certain piece of land now in the village of Cohoes, particularly described in the submission, and occupied the same in the construction and as

The People *v.* White.

part of the bed of the Erie canal, and so used the same as part of the bed of the canal, until about the year 1842, when that part of the said Erie canal was entirely abandoned, and still is, and a new canal was constructed in another place, with the intention of never again using the land in question for the purposes of said canal. When the said land was so taken the said Hugh White was the owner thereof in fee simple, and since the abandonment thereof by the state he has taken and now holds possession of the said premises, claiming to be seised in fee thereof. · The question submitted for decision was whether or not the state was the owner, in fee simple, of the land; or in other words, whether, under the statute referred to, the state took any thing more than the right to use the land for the purposes of a canal so long as it was appropriated to, and used for that purpose.

*L. S. Chatfield,* attorney general, for the plaintiffs.

*D. McMartin* for the defendant.

*By the Court,* PARKER, J, I think it is fairly to be inferred from the case, though it is not stated in terms, that the land in dispute, taken by the canal commissioners for the Erie canal in 1819, was duly paid for according to the appraised valuation. The only question to be decided, therefore, is whether the plaintiffs continue to be the owners of the land since the abandonment of it in 1842, when a canal was constructed in another place, with the intention of never again using the land in suit for the purpose of a canal.

What title then did the plaintiffs get, by virtue of the acts of the legislature and the proceedings under them? The act of 1817, chap. 262, sec. 3, (*Sess. Laws of* 1817, *p.* 263,) authorizes the canal commissioners to take possession of any lands, waters and streams " *necessary for the prosecution of the improvement intended by*" that act, and points out the mode in which the damages shall be ascertained. It also directs the canal commissioners to pay such damages, and then declares " the fee simple of such premises so appropriated shall be vested in the people

of this state." By the 3d section of the act of 1819, (*Sess. Laws of* 1819, *p.* 123,) under which the land in suit was taken, most if not all of the provisions of the third section of the act of 1817 are adopted ; and though it does not contain the same express declaration as to the title to be vested in the people of this state that is contained in the act of 1817, yet I think such was the intention of the act. And I shall assume that this provision of the act of 1817 is therefore applicable to this case.

It may well be doubted whether the language of the act is sufficient to vest in the people a fee simple absolute. Though the estate is declared to be a fee simple, yet it may be a determinable fee. By fee simple is generally meant a fee simple absolute ; but fee simple and fee are often used as convertible terms. (1 *R. S.* 722. 4 *Kent's Com.* 4, *note d.* 5 *T. R.* 107.) A qualified, base, or determinable fee, is an interest which may continue for ever, but is liable to be determined by some act or event circumscribing its continuance or extent. (4 *Kent's Com.* 9.) Although in this case the statute declares the estate to be a fee simple, yet it has been doubted whether it intends a fee indefeasible or indestructible. (*See Rep. of Canal Board, Ass. Doc. No.* 187, *of* 1841.) Is it not in fact a fee limited to the purposes for which it was created ? The whole section, carefully examined, seems to imply such a limitation. The commissioners are only authorized to take possession of, and use such lands as are "*necessary for the prosecution of the improvements intended*" by the act ; and it is only a fee simple of the premises "*so appropriated*" that is vested in the people of the state. The state has no right to take what is not necessary for the improvement. I see no reason why this restriction does not apply as well to the duration of the estate as to the extent of the actual occupation. When the canal is abandoned, the land taken can no longer be said to be "necessary to the prosecution of the improvement ;" and it is only to the extent of the land "so appropriated" which is taken, appraised and paid for according to the previous provisions of the section, that the title is declared to vest in the state.

That it was not the design of the legislature to vest in the

state a fee simple absolute in the lands taken for the bed of the canal, is also inferrible from other provisions of the same section of the statute. The appraisers are directed to make a just and equitable estimate of the loss and damage, if any, over and above the benefit and advantage to the respective owners by and in consequence of making and constructing the works aforesaid. It is not the value of the land that is to be ascertained, but the loss and damage : and from this the deduction for benefit to the owner is to be made. This deduction also forms a part of the consideration for the transaction, and implies that the benefit is to be continued to the owner of the land as long as it is held for public use. It is upon this principle that the damages are appraised.

In all cases, then, this deduction for benefit to the owner is to be made ; and if, after the canal is abandoned and the owner ceases to derive any benefit from its proximity, the state can still retain the land, it is taking private property for public use without making just compensation. Independent of the question of constitutional prohibition, which I shall hereafter consider, the statute should not unnecessarily receive a construction productive of so great injustice.

The general turnpike act, passed March 13, 1807, (1 *R. L.* 231,) provided for taking necessary land, and appraising the damages, and contained the following clause: "And the said president and directors aforesaid, upon paying the said several owners of the said lands the several sums so assessed and awarded by the said appraisers in their said inquisition, shall and may have and hold *to them and their successors and assigns forever,* the lands and tenements in the said inquisition described." It was the legal effect of this language to convey a fee, as plainly as if the words " fee simple" had been employed, as was done in the act of 1817, above cited. But it has been adjudged that where land taken for a turnpike had been abandoned, it reverted to the original owner. In *Hooker* v. *Utica and Minden Turnpike Co.* (12 *Wend.* 271,) the court said, " although the act of incorporation vests in the company the title to the lands over which the road passes, on compliance by them with the provis-

ions of the act, such title must nevertheless be considered as vested only for the purpose of a road, and when the road is abandoned the land reverts to the original owner."

But whatever may be the construction given to the statute, it may be well in this case to look beyond it and see how far the legislature has power to go, in taking the property of the citizen. The taking of property for public use can only be sanctioned by virtue of the sovereign right of eminent domain. Long before the organization of our government this right was recognized, throughout the civilized world, and its exercise restricted to cases of public necessity and just compensation. (*Grotius De Jur. B. and P. b.* 8, *ch.* 14, *s.* 7. *Puf. De Jur. Nat. et Gent. b.* 8, *ch.* 5, *s.* 7. *Bynckershoek Quæst. Jur. Pub. b.* 2, *ch.* 15. 1 *Bl. Com.* 139. 2 *Kent's Com.* 339.) At the time the land in suit was taken, in 1819, this principle had been made a part of the constitution of the United States, which provided (*Art.* 5 *of Amendments*) "Nor shall private property be taken for public use without just compensation." Subsequently this same language was made part of our state constitution adopted in 1822. (*Const. of* 1822, *art.* 7, *sec.* 7.) It is true the provision in the constitution of the United States has been decided to be only restrictive upon the general government and its officers. (2 *Cowen*, 818. 8 *Wend.* 100. 7 *Peters*, 243.) But the clause thus inserted in the constitution was only declaratory of a previously existing and universal principle of law; (2 *Kent*, 339;) and it was recognized by the courts of this country long before it was incorporated into our state constitution. (*Gardner* v. *Village of Newburgh*, 2 *John. Ch. Rep.* 166. 20 *John.* 105, 735. 17 *Id.* 215. *Baldwin's C. C. Rep.* 219. 3 *Story's Com.* 661. 3 *Kelly*, 43.) The unwritten constitutional law governs this case. This question is therefore to be tested by the same rules as if the land had been taken since the adoption of the constitution of 1822.

The taking of private property, then, can only be justified when it is taken for public use, and on payment of just compensation. It is only by virtue of this principle, and under this restriction, that land is taken for public roads, turnpikes, rail-

ways, &c. All are placed upon the same footing, and are subject to the same limitations. The right acquired is a mere easement, or servitude as it is called in the civil law—a right to use —and when the use is abandoned the title reverts to the former owner. This principle has been repeatedly adjudged with regard to public roads, and streets in cities. (15 *John.* 447. 1 *Wend.* 262. 2 *Id.* 472. 6 *Id.* 461. 8 *Wend.* 85. 11 *Id.* 150. 12 *Id.* 98. 4 *Hill,* 140. 5 *Paige,* 159.) And I think it equally applicable to canals.

If the state may retain this land, thus compulsorily taken, after it has been abandoned for the purpose of a canal, it may sell it to some other citizen. This could not be justified under a permission to take private property for public use. It would be taking the property of one citizen and transferring it to another. In other words, it would be taking private property for private or individual use ; and it would be a plain violation of the constitutional provision in question, and a gross outrage upon the rights of the citizen. Upon this subject we are not without ample authority. In the *Matter of Albany-street,* (11 *Wend.* 150,) the court had under consideration section 179, 2 Rev. Laws, 416, which authorized the commissioners, if they should deem it expedient, where part of a lot only was necessary, to take the whole lot and sell such part as was not required for public use ; and it was held to be unconstitutional and void. The court said, " if it is to be taken literally that the commissioners may, against the consent of the owner, take the whole lot, when only a part is required for public use, and the residue to be applied to private use, it assumes a power which, with all respect, the legislature did not possess. The constitution, by authorizing the appropriation of private property to public use, impliedly declares that, for any other use, private property shall not be taken from one and applied to the private use of another. It is a violation of natural right, and if it is not in violation of the letter of the constitution it is of its spirit, and can not be supported." (*See also Bloodgood* v. *Mohawk and Hud. Railroad Co.* 18 *Wend.* 9, 59 ; *Matter of John and Cherry streets,* 19 *Id.* 659 ; *Varick* v. *Smith,* 5 *Paige,* 137 ; *Taylor* v. *Por-*

*ter,* 4 *Hill,* 143.) These cases all agree that the legislature has no power to permit private property to be taken for any other except public use, and that any enactment interfering, beyond this limit, with the right of the citizen is void. I am satisfied there is no power to retain land compulsorily taken for the purpose of constructing the canal, after the canal has been abandoned, and the land has ceased to be necessary for the public use. If therefore the broadest construction of the statute of 1817 be adopted, as claimed by the plaintiffs, it would afford no constitutional protection.

There is another ground upon which I think the plaintiffs' title can not be sustained. The defendant has had no just compensation for his land. Compensation was made to him on the supposition that he was to be benefited by the location of the canal on his premises, and it was only the damages, over and above such benefit, that were awarded to him. That benefit has now ceased, by the abandonment of the canal, and the compensation can no longer be regarded as justly made. I think this view is fully sustained by the ruling of the court in *Gardner* v. *The Trustees of the Village of Newburgh,* (2 *John. Ch.* 162.) That case was decided in 1816, before the clause which authorizes private property to be taken for public use was made a part of the state constitution. In that case the legislature had failed to provide a just compensation; and they have certainly failed to require a just compensation in this case, if the title they have vested in the state can endure any longer than the defendant is to enjoy the benefit of the canal. The great injustice of a different conclusion is apparent. Suppose the benefit to the owner is deemed equal to the damages for the taking of the land. The owner gets nothing for his land. Then the canal is abandoned. If the state can retain the land, the owner loses its whole value.

For the reasons above stated I think the plaintiffs have no title to the land, and that the defendant should have judgment.

[ALBANY GENERAL TERM, May 5, 1851. *Harris, Watson* and *Parker,* Justices.]