Johnson, J.
 

 The plaintiffs are right in the position that the maps which were given in evidence by the defendants, of those parts of the Brie canal as originally constructed and as subsequently enlarged, that include the premises in question, do not upon the bill of exceptions appear either to be or to be copies of the maps mentioned in chapter 451, § 6, of the laws of 1837. They therefore did not of themselves afford presumptive evidence, that the lands thereon indicated to belong to the state had been taken and appropriated by the state for the canals. Nor does enough appear upon the bill of exceptions to enable us to say that they were offered as being such maps, although the form of the objection taken to them would incline us to think that may have been the case. If in fact they were maps to which by law the character of presumptive evidence was attached, the defendant has lost the benefit of them by failing to get into the bill of exceptions a clear disclosure of their character.
 

 It remains to be considered whether, without the benefit of the ' presumption which might have arisen from authenticated copies of the state maps, the defendant has succeeded in making out a defense.
 

 
 *304
 
 It is established by the evidence disclosed in the bill of exceptions, that the premises de'manded by the plaintiff were actually occupied by the canal as originally constructed, and at least as early as 1825. They continued to be so occupied until the enlarged canal was constructed. Since that time the defendant has occupied the premises. There is' no sufficient evidence of an appraisement of these premises as appropriated for the canal. The unsigned and undated paper found in the office of the canal appraisers, although admitted to relate to the premises in question, is not itself proof of an appraisement, and it is the only attempted proof.
 

 The defendant’s case, therefore, depends upon the effect of section 49 of title 9 of chapter 9 of the first part of the re se statutes. .That section reads as follows : “ No claim for damages for premises that shall have been appropriated for the use of a canal, at any time before.this chapter shall be in force, shall be received by the appraisers, unless it shall be exhibited within one year after this chapter shall become a law; and the premises so appropriated shall be deemed the property of the state; and no claims other than those so exhibited shall be paid, without the special direction of the legislature.” The chapter in -which this section is found was passed December 3d, 1827, and took effect as a law January 1st, 1828.
 

 The mere reading of this section makes it apparent, that premises may be appropriated to the use of a canal within its meaning, before any claim for damages or any appraisement thereof. The appropriation is complete, when the officers of the state have entered upon and taken possession of the land and constructed the canal upon it.
 
 (Baker
 
 v.
 
 Johnson,
 
 2
 
 Hill,
 
 342;
 
 People
 
 v.
 
 Hayden,
 
 6
 
 id.
 
 359.) The premises demanded were, therefore, both when this section was passed and when it took effect as a law, in the condition to which the language of the section applies. They'had been appropriated to the use of a canal, and according to the language of the section claims for damages on account of such appropriation were to be made to the ca
 
 *305
 
 nal appraisers within a year, and no others were to be paid without the special direction of the legislature, and the premises so appropriated were to be deemed the property of the state.
 

 If the legislature had the power to pass this law, then the premises were and are in pursuance of its terms to be deemed the property of the state. The act is in,substance a statute of limitations applicable to pre-existent demands. In respect to statutes of limitations, the supreme court of the United States say, in
 
 Jackson
 
 v.
 
 Lamphire,
 
 (3
 
 Peters,
 
 290,) “ The time and manner of their or nation, the exceptions to them, and the acts from which the time l-maited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country and the emergency which leads to their enactment. Oases may occur, where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the court.” The provisions of this act, which allowed a year after its passage for the making of claims, do not come up to the unreasonableness which will render such a law void. To do that, a court must, I think, be able to say, that no substantial opportunity is afforded to the party affected to assert his rights after the passage of the law; that the unmistakable purpose and effect of the law' is to cut off the right of the party, and not merely tolimit the time in which he may begin to enforce it. Viewed as a statute of limitations, the act in question, therefore, does not violate the provision of the constitution of the United States, forbidding the states to pass any law impairing the obligation of contracts.
 

 Nor does it violate the provision of the constitution of this state, of 1821, which forbids the taking of private property for public use without just compensation.
 
 The People
 
 v.
 
 Hayden
 
 and
 
 Baker
 
 v.
 
 Johnson,
 
 before cited, as well as
 
 Bloodgood
 
 v.
 
 The Mohawk and Hudson Railroad Co.,
 
 (18
 
 Wend.
 
 9,) affirm the position that where private property is taken by the state for
 
 *306
 
 public use, it is sufficient that a certain and adequate remedy should be provided, by which the individual can obtain compensation without any unreasonable delay. Such a remedy was provided by the acts of 1817 and 1819 in respect to the construction of the canals. The construction upon those acts has been, that the fee did not vest in the state until the payment of the compensation, although the authority to enter upon and appropriate the land was complete, prior to payment. If the officers whose duty it was to procure an appraisement did not proceed to perform that duty, the remedy by mandamus, to get them in motion, was adequate and complete. By force of those acts, the entry upon, and appropriation of the premises in question for the canal, were lawful, even though the fee did not pass, by reason of the non-appraisement of the damages and their consequent non-payment.
 

 When § 49, before referred to, was passed, the condition of the property was that the state had appropriated it lawfully for a canal, but the fee had not passed, compensation not having been made. That section' declared that premises so situated should be deemed the property of the state, giving to the party his remedy to obtain payment therefor, but requiring that right to be exercised within the period of a year. The state thereby exercised directly its right of eminent domain upon the property so situated, as effectually as if it had then first been taken under the delegated authority of the canal commissioners.
 

 As to the quantity of estate acquired by the state, I entertain no doubt that it is a fee simple. The language employed is so broad as to require a fee simple. The lands are to be deemed the property of the state, and that excludes the idea that any one else is to retain a property in them. That under such a state of the title, the lands would not revert upon the abandonment of their use for the purpose of a canal, and that such a title might be acquired under the right of eminent domain,'notwithstanding the possibility that the lands might cease to be used for the purpose for which they were originally taken, was held in
 
 Hayward
 
 
 *307
 
 v.
 
 The Mayor &c. of New-York,
 
 (3
 
 Selden,
 
 314.) The nonsuit was therefore right, and the judgment should be affirmed.
 

 Edwards, J,, delivered an opinion to the same effect.
 

 Gardiner, Ch. J., and Denio, Allen and Selden, Js., concurred.
 

 Parker, J., dissented.
 

 Judgment affirmed.