## SUPREME COURT.

ELIZA R. M. BIRDSALL agt. SOLOMON F. CARY and WILLIAM JACKSON.

*Canals — Appropriation of lands by the state for canal purposes — What fee or interest in such lands state acquires by such appropriation — Does such fee or interest survive the abandonment of the canal.*

When the Chenango canal was constructed defendants' grantor owned lot No 5, and plaintiffs' grantor owned lot No. 2, which adjoined five on the west. The state, previous to 1837, appropriated a strip of land from the east side of lot 5, and adjacent to lot 2 (appropriating no part of lot 2), for the Chenango canal. The persons interested in the premises never exhibited to the appraisers a statement of their claims. No appraisement was made of the damages and benefits resulting to them on account of the appropriation, and nothing was paid by the state for the land taken. The canal was completed in 1837, and was operated until May 1, 1878, when it was abandoned pursuant to chapter 404, Laws of 1877. In 1862 the plaintiff became, and has since remained, the owner of lot 2, east of and adjacent to the canal, and on the side opposite to the defendants' lot. In 1878 the defendants became, and have since remained, the owners of lot No. 5, on which the canal was built. In March, 1882, the plaintiff executed the release required by section 1 of chapter 551 of Laws of 1880, which was filed with and approved by the superintendent of public works, and recorded in Broome county pursuant to chapter 288 of Laws of 1881. In 1882 defendants entered upon the land east of the center line of the canal and damaged it, for the recovery of which this action is brought:

*Held, first,* that under 1 Revised Statutes (*sec.* 16; *Id.* [7*th ed.*], 629, *sec.* 16), the canal commissioners had power to appropriate land for the use of the canal.

*Second.* Entering upon the land and constructing the canal, amounted under the statute to a legal appropriation of all of the land within the blue or external lines of the canal. The legality or completeness of the appropriation did not depend upon a prior assessment or payment of damages.

*Third.* That the state acquired a fee or permanent interest in the land, which survived the abandonment of the canal, and which could be granted to the adjoining owner by the legislature.

*Fourth.* That plaintiff, by his compliance with the requirements of section 1 of chapter 551 of the Laws of 1880, derived from the state a title to the land in question which cannot be overthrown.

*Broome Circuit, October,* 1883.

Birdsall agt. Cary.

WHEN the Chenango canal was constructed defendants' grantor owned lot No. 5, and plaintiff's grantor owned lot No. 2, which adjoined five on the west. The state previous to 1837 appropriated a strip of land from the east side of lot 5 and adjacent to lot 2 (appropriating no part of lot 2) for the Chenango canal.

The persons interested in the premises never exhibited to the appraisers a statement of their claims; no appraisement was made of the damages and benefits resulting to them on account of the appropriation, and nothing was paid by the state for the land taken.

The canal was completed in 1837 and was operated until May 1, 1878, when it was abandoned pursuant to chapter 404, Laws 1877.

In 1862 the plaintiff became, and has since remained, the owner of lot 2 east of, adjacent to the canal, and on the side opposite to defendants' lot.

In 1878 the defendants became, and have since remained, the owner of lot 5 on which the canal was built.

Section 1, chapter 551, Laws 1880, provides: "Sec. 1. Except as hereinafter provided, all the estate, right, title, interest and property which the people of this state have heretofore acquired and now have in and to all the lands and water privileges taken and appropriated for the purpose of constructing and operating the Chenango canal, and what is called and known as the Chenango canal extension, commencing at and lying south of the stone culvert in the village of Hamilton, in the county of Madison, shall revert to and is hereby granted and released to and vested in the person or persons owning the lands adjoining to the center line of said canal, in consideration of and upon the condition precedent that such owner or owners shall, by an instrument in writing under their hands and seals and duly acknowledged, release and discharge the state from all obligation to maintain the bridges and other structures connected with such portions of said canal, and of said extension, and from all liability for

damages arising from the abandonment thereof; whereupon' they and each of them are hereby authorized and empowered to hold, grant, devise and convey the same."

In March, 1882, the plaintiff executed the required release which was filed with, and approved by, the superintendent of public works, and recorded in Broome county pursuant to chapter 288, Laws 1881.

The exception referred to in the first sentence of the section does not relate to the conditions of this case.

In May, 1882, defendant entered upon the land east of the center line of the canal, and damaged it, for the recovery of which this action is brought.

*Ausburn Birdsall* and *Mr. Prindle*, for plaintiff.

*D. S. Richards*, for defendants.

FOLLETT, *J.* — The decision of this case turns upon the question, whether the state acquired a fee or a permanent interest in the land, which survived the abandonment of the canal, and which could be granted to the adjoining owner by the legislature.

At the date of the appropriation in question the following sections of title 9, chapter 9, part 1, Revised Statutes, were in force :

SECTION 46. "When any lands, waters or streams, appropriated by the canal commissioners to the use of 'the public, shall not be given or granted to the state, it shall be the duty of the appraisers to make a just and equitable estimate and appraisement of the damages and benefits resulting to the persons interested in the premises so appropriated, from the construction of the work, for the purpose of making which such premises shall have been taken."

SEC. 48. "Every person interested in premises so appropriated, if he intend to make any claim for damages, shall, within one year after such premises shall have been taken for the use of the state, exhibit to the appraisers a statement

Birdsall agt. Cary.

of his claim, in writing, signed by himself, his guardian or agent, and specifying the nature and extent of his interest in the premises appropriated, and the amount of damages; and every person refusing or neglecting such claim within the time prescribed, shall be deemed to have surrendered to the state his interest in the premises so appropriated."

SEC. 49. "No claim for damages for premises that shall have been appropriated to the use of a canal, at any time before this chapter shall be in force, shall be received by the appraisers, unless it shall be exhibited within one year after this chapter shall become a law; and the premises so appropriated shall be deemed the property of the state; and no claims other than those exhibited, shall be paid without the special direction of the legislature."

SEC. 52. "The fee simple of all premises so appropriated, in relation to which such estimate and appraisement shall have been made and recorded, shall be vested in the people of this state."

SEC. 53. If the damages so estimated and appraised shall exceed the benefits, it shall be the duty of the canal commissioners to pay the amount of such excess of the damages to the persons appearing by the determination of the appraisers to be thereto entitled * * *."

The canal commissioners had power to appropriate land for the use of the canal (1 *R. S.*, 220, *sec.* 16; *Id.* [*7th ed.*], 629, *sec.* 16). Entering upon the land and constructing the canal amounted under the statute to a legal appropriation of all of the land within the blue or external lines of the canal. The legality or completeness of the appropriation did not depend upon a prior assessment or payment of damages (*Baker* agt. *Johnson*, 2 *Hill*, 342; *People* agt. *Hayden*, 6 *Hill*, 389; *Turrill* agt. *Norman*, 19 *Barb.*, 236; *Rexford* agt. *Knight*, 11 *N. Y.*, 312).

Whatever the rule may be in regard to private corporations, it is well settled that the state or any of its municipal subdivisions, may legally appropriate for public use the land of a

citizen and acquire title thereto, if means are provided for making compensation afterwards, if claimed.

Upon the question of the extent of the interest acquired by the state in the lands appropriated, the following cases arising under the sections quoted, and earlier statutes, have been cited and deserve consideration:

In *Brinkerhoff* agt. *Wemple* (1 *Wend.*, 470) damages for land appropriated for the Erie canal had been appraised, pursuant to the statutes existing prior to 1825, and paid to one of two tenants in common. The co-tenant brought an action to recover half of the money. The defendant insisted that as the canal was finished before the conveyance to the plaintiff he had no right to the money. The court held that the completion of the canal did not divest the former owner of the fee of his lands occupied by it, and that under the following section the payment of the money seemed to be a condition precedent to the passing of the fee from the former owner to the people of the state. The law referred to was section 3, chapter 272, Laws 1817, and reads: "And the canal commissioners shall pay the damages so to be assessed and appraised, and the fee simple of the premises so appropriated shall be vested in the people of this state." Section 48 (1 *R. S.*, 226) above quoted was not enacted until 1827, and did not take effect until January 1, 1828, and after this case was decided.

In *Baker* agt. *Johnson* (2 *Hill*, 342) the state appropriated lands of the plaintiff for constructing the Black River canal, and contracted with defendant to build it on these lands. The defendant used in construction stone excavated from the appropriated lands, to recover the value of which the action was brought. An appraisement had not been had. It was held the state owned the stone, and that under the construction contract the defendant had the right to use them, and the plaintiff was nonsuited. It was said: "Although the absolute fee did not pass to the state until the appraisement of damages, yet the right to enter and use the property was perfect the moment the appropriation was made." The proposition

contained in the first clause of the sentence quoted was not involved in and was unnecessary for the decision of the case.

In *Turrill* agt. *Norman* (19 *Barb.*, 263) the state appropriated lands of the plaintiff for enlarging the Erie canal, and contracted with defendant to build it on those lands under which the defendants entered and began work.

Chapter 485, Laws 1851 (by which revenues were disposed of and money raised to carry on the work), was, in May, 1852, declared unconstitutional (7 *N. Y.*, 9). The action was brought upon the theory that under the decision of the court of appeals the state was without power to appropriate the lands and that the defendant was a trespasser. But it was held that the commissioners had power to appropriate those lands for this purpose under prior laws and that plaintiff could not recover. As in *Baker* agt. *Johnson*, and upon its authority, it was said : "And although the title did not vest in the people until compensation made, or at least until the amount was ascertained and fixed in the mode prescribed, no action can be maintained by the owner for the injury." But, as in *Baker* agt. *Johnson*, the point stated in the first clause of the sentence was not involved.

The reports of these cases do not show when the appropriations were made, or that a year had passed since they were made, and the effect of section 48, above quoted, was not considered in either case.

In both cases the state having appropriated the lands and provided for making compensation, it had the right to use the lands without regard to the quantity of the estate then acquired, whether a fee or a right of user.

In the *People* agt. *White* (11 *Barb.*, 26), land of the defendant was appropriated in 1819 for the construction of the Erie canal, appraised and paid for. It was used until 1842, when that part of the canal was abandoned, and the defendant entered into possession and claimed the fee thereof. The people sought to recover the land, and it was held that the people took nothing but the use of the land, and that upon its

abandonment for that use, the title reverted to the defendant, which supports the defendant's contention in this action. This case, though not referred to in *Rexford* agt. *Knight* (15 *Barb.*, 627; 11 *N. Y.*, 308), is clearly overruled by that case.

In the case last cited, land of Eleazer Rexford was appropriated in 1822, but whether with or without compensation was a fact in dispute between the supreme court and the court of appeals. Rexford conveyed to defendant's grantor in 1829, a piece of land bounded on the east by the canal. When the canal was enlarged, the foot of the west bank was built sixty or seventy feet from the westerly exterior or blue line of the old canal, leaving a strip of that width, of which the state made no use. The defendant entered and used it. The heirs of Rexford brought ejectment, claiming that the state never acquired title to it.

When the land was appropriated the statute read : "The canal commissioners shall pay the damages so to be assessed and appraised, and the fee simple of the premises so appropriated shall be vested in the people of this state " (*Sec. 3, chap.* 272, *Laws* 1817).

The general term held (15 *Barb.*, 627), that an appraisal had been had, the benefits adjudged equal to the damages, and that under the above quoted section the state acquired the fee, and nonsuited the plaintiff.

The court of appeals (11 *N. Y.*, 308, 309, 312), held the evidence insufficient to establish an appraisement, and that the state, under section 3, chapter 272, Laws 1817, above quoted, did not acquire the fee. The land having been appropriated prior to the adoption of part first of the Revised Statutes, the court of appeals held that section forty-nine above quoted, applied to the case, and that the state acquired the fee under that section, and affirmed the judgment. This case was commented upon and approved in the *Brooklyn Park Commissioners* agt. *Armstrong* (45 *N. Y.*, 242). The effect of this decision is that a statute is constitutional which provides that unless owners of appropriated lands claim compensation

within the time limited they lose all right to compensation, and the lands become the property of the state.

Section forty-nine is not applicable to the case at bar, for these lands were appropriated after the chapter in which that section is contained took effect. But section forty-eight, above quoted, which is applicable, is quite as strong as to the effect of failing to claim compensation within the time limited. " The owner shall be deemed to have surrendered to the state his interest in the premises so appropriated." This section remained the law of the state and unchanged, until amended by chapter 836, Laws 1866, and under it, and *Rexford* agt. *Knight*, the defendant's grantor must " be deemed to have surrendered to the state his interest in the premises so appropriated."

As held by justice MURRAY in *Snyder* agt. *Canal Railroad Company* (*affirmed*, 13 *N. Y. W. Digest*, 329) the state may acquire title : (1) By appropriation and payment of the damages. (2) By appropriation and failure of the owner to present, within the time limited, his claim for damages.

In the manuscript opinion of the general term in the case last cited, it is said : " There is no satisfactory evidence that the then owner ever made any claim for damages within the year allowed by law. If he did not he was · deemed to have surrendered all his interest in these lands to the state, whose title then became absolute (1 *R. S.*, 226, *secs.* 48, 49)."

It was said in *The Brooklyn Park Commissioners* agt. *Armstrong* (45 *N. Y.*, 240) : " The extent of the right acquired in lands taken for public use depends in some measure upon the needs for which they were taken."

What were the needs of the state at the date of the passage of these statutes, and the intentions of the legislatures which enacted them ?

By article 7, section 10, of the Constitution of 1821 then in force, it was provided : "And the legislature shall never sell or dispose of * * * the said navigable communications, or any part or section thereof; but the same shall be and

remain the property of the state." The same provision is contained in the Constitution of 1846 (*Art. 7, sec. 6*).

That the needs of the state required, and that it intended to acquire, absolute title to lands within the blue lines is apparent from the sections quoted, and especially when read in the light of the then existing constitutional provisions.

When a state or municipal corporation has acquired the absolute title to land for public use, which use has been discontinued, the title does not revert, but may be granted to individuals for private purposes (*The Brooklyn Park Com'rs* agt. *Armstrong, supra; Hutderman* agt. *The Pennsylvania R. R. Co.*, 50 *Pa.*, 425).

Apart from the title acquired by appropriation, and failure of the owner to present his claim for damages within the time limited, the state acquired title by adverse possession.

When an entry on land is made under color and claim of title and it is held adversely for twenty years, title is acquired (*Cahill* agt. *Palmer*, 45 *N. Y.*, 478; *Sherman* agt. *Kane*, 46 *Superior Ct. R.*, 310; *affirmed*, 85 *N. Y.*, 577; *Warfield* agt. *Lindell*, 38 *Mo.*, 561; *Hale* agt. *Gladfielder*, 52 *Ill.*, 91; *Trim* agt. *McPherson*, 7 *Caldwell*, 15; *Hopkins* ag. *Culloway*, *Id.*, 37; *Chilles* agt. *Jones*, 7 *Dana*, 528, 540; *Wood's Lim.*, 489; *Cooley's Const. Lim.*, 365).

Under the Constitution and statutes quoted, the state for more than forty years in the most public and solemn manner claimed to own the land in question, and during all that time it occupied it under the claim, adversely to the defendants, their grantors, and all persons.

A state, or a political subdivision thereof, may acquire title by adverse possession (*Sherman* agt. *Kane, supra; Rhode Island* agt. *Massachusetts*, 4 *How.*, 591).

In the case last cited it was said, at page 639: "For the security of rights, whether of states or individuals, long possession under a claim of title is protected."

In the construction of uncertain or equivocal statutes, if great public inconvenience necessarily flows from one construc-

Birdsall agt. Cary.

tion, it is a strong argument that such construction does not express the intention of the legislature (*Ram on Judgments*, *chap.* 6, *sec.* 1).

It is well known to all persons conversant with titles that the records of the counties through which the lateral canals were built show that in many and perhaps in a majority of cases claims were not filed by owners, probably upon the belief that the benefits equaled the damages. These owners have conveyed, bounding by or excepting the canals from their grants. In cities and villages the state encouraged the building of warehouses and factories upon lands adjacent to and partly on the unoccupied canal lands. Streets and alleys were opened and blocks erected with reference to the location of the canals. Since the abandonment of the Chenango, Chemung, Genesee Valley and Crooked Lake canals new streets on their sites have been opened and new blocks built upon the strength of the title derived from the state. It would be a calamity to cities, villages and adjoining owners, as well as a fruitful source of litigation if the title derived from the state can be overthrown.

If the state in such cases did not acquire the title with power to convey, can it be compelled to rebuild the abandoned farm bridges, and so reunite farms that will be severed by recoveries in ejectment, or can the state be compelled to restore the water courses changed by the construction and abandonment of canals? If the state cannot be compelled to do these things and will not, the adjoining owners are left without remedy.

The subdivided interests of heirs, if recoverable, would be of little or no value except as a source of annoyance to the adjoining owners, but a source of great injury to such owners, in many instances amounting to a destruction of the value of their property. And while this judgment does not need the support of the rule, that in such cases the public welfare should not be disregarded, yet I think, on that ground courts should so interpret the statute as to uphold the title of the

state and its grantees if it can be done without violating the rules of law.

Judgment is ordered in favor of the plaintiff, with costs.