## LETITIA C. BAKER, APPELLANT, v. OAKWOOD, RESPONDENT.

*Statute of limitations — when a bar to the recovery of inherited estates — an estate by the curtesy is not acquired during an adverse possession — title to real estate can be acquired by adverse possession.*

Charles B. Hargin died intestate on August 6, 1840, owning an undivided one-fourth part of certain land, leaving him surviving a widow Mary, two daughters, Letitia, the plaintiff, and Julia, and a son Charles, his only heirs-at-law. This land, which was then subject to a mortgage, duly executed and recorded December 31, 1835, by the then owner of the entire title, was, on November 1, 1845, sold to Hamilton White, assignee of the mortgage, under an imperfect statutory foreclosure thereof, which did not divest the title of the owners of the equity of redemption. On March 22, 1848, White and wife conveyed the land to one Hovey, who, on May 29, 1849, conveyed it, by a deed duly recorded, to Lucy Raynor, who immediately went into possession, and continued therein until September 3, 1859, when it was conveyed by her, by a deed duly recorded September 6, 1859, to the defendant, which immediately went into possession, and has ever since remained, in possession of said land.

The plaintiff, who was born October 31, 1831, married in 1848, obtained a divorce in 1850, and again married in 1865, began this action on January 9, 1886, claiming to be entitled to recover one-twelfth of the land, as one of the heirs-at-law of Charles Hargin, her father.

*Held,* that, the right of the plaintiff to recover this one-twelfth interest was barred by the statute of limitations. (Code of Procedure, §§ 78–81, 101.)

The daughter Julia was born December 12, 1838, married George Pomeroy, February 23, 1858, had a child born June 5, 1859, which died in August, 1859, and said Julia died intestate November 5, 1859, leaving her surviving George Pomeroy, her husband, and her mother, sister and brother, her only heirs-at-law.

*Held,* that, as his coverture began after an adverse possession had commenced and ended during its continuance, the husband never acquired an estate by the curtesy.

On October 16, 1885, Mary, the widow of Charles B. Hargin, quit-claimed and released her life estate in two-twelfths of the land which had descended to her from Julia and Charles, who had both died intestate, to the plaintiff Letitia, who claimed that the life estate merged in the remainder and that she had a present right to recover the said two-twelfths.

*Held,* that, under the statutes of limitation in this State, title may be acquired by adverse possession, and that, under this rule, the life estate of Mary C. Hargin had vested in the defendant prior to the release or grant by the former to the plaintiff, thereby defeating the plaintiff in her present right to recover any interest in or part of the land in dispute.

*Birdsall* v. *Carey* (66 How. Pr., 358, 366); *Eldridge* v. *City of Binghamton* (42 Hun, 202, 204) followed.

The question whether the instrument executed by Mary C. Hargin was a release or a grant and void by the statutes against champerty, or whether the defendant was a mortgagee in possession, was not decided.

APPEAL from a judgment, entered in Onondaga county upon the trial of this action by the court without a jury.

August 6, 1840, Charles B. Hargin died intestate, owning an undivided fourth of the land described in the complaint, and leaving him surviving Mary C. Hargin, widow, Letitia C. Hargin (now Letitia C. Baker, plaintiff), daughter, Charles Hargin, a son, and Julia Hargin, a daughter, his only heirs-at-law. This land was then subject to a mortgage, duly executed and recorded December 31, 1835, by the then owner of the entire title. November 1, 1845, this land was sold to Hamilton White, the assignee of the mortgage, under an imperfect statutory foreclosure of said mortgage, which (as it seems to be conceded) did not divest the title of the owners of the equity of redemption. November 10, 1845, the affidavits proving the steps taken upon the foreclosure were recorded.

On March 22, 1848, White and his wife conveyed (by a deed duly recorded July 31, 1848) the land to Alfred H. Hovey, who, May 29, 1849, conveyed (by a deed duly recorded July 3, 1849) the land to Lucy M. Raynor, who immediately went into possession and continued therein until September 3, 1859, when she conveyed (by a deed duly recorded September 6, 1859) the land to the defendant corporation in this action, which immediately went into possession and has ever since remained, and now is, in possession of said land. Julia Hargin was born December 12, 1838, married George Pomeroy February 23, 1858, and had a child born June 5, 1859, which died in August, 1859. On November 5, 1859, Julia died intestate, leaving her surviving George Pomeroy, her husband, Mary C. Hargin, mother, the plaintiff, her sister and Charles Hargin, her brother, her only heirs-at-law. Charles Hargin was born July 31, 1834, and died unmarried and intestate July 8, 1861, leaving him surviving Mary C. Hargin, mother, and this plaintiff, his sister, his only heirs-at-law. This plaintiff was born October 31, 1831, was married in 1848, was divorced in 1850 and again married in 1865. On October 16, 1885, Mary C. Hargin released or conveyed (by an instrument duly recorded July 17, 1886) all of her interest in the said land to this plaintiff, who, on

January 9, 1886, began this action by the personal service of the summons and complaint, claiming to be entitled to recover : (1.) One-twelfth of the land as one of the heirs-at-law of Charles B. Hargin, her father. (2.) One twenty-fourth of the land as one of the heirs of Julia Pomeroy, her sister. (3.) Three twenty-fourths of the land as heir-at-law of Charles Hargin, her brother. The plaintiff claims that George Pomeroy has no estate, by the curtesy, in the share of his deceased wife Julia, because she was not seized during coverture.

This action was tried at Special Term, which held that the plaintiff was not entitled to recover, because : (1.) The statute of limitations had applied as a bar. (2.) The defendant was a mortgagee in possession. (3.) The one-twelfth which came by descent from Julia was subject to the estate by the curtesy of her husband, George Pomeroy. (4.) The one-twelfth which came by descent from Charles was subject to the life estate of their mother. Mary C. Hargin.

From this judgment the plaintiff appeals and presents a case containing all the evidence.

*William S. Andrews*, for the appellant.

*George F. Comstock*, for the respondent

FOLLETT, J. :

The plaintiff's right to recover the undivided twelfth which she inherited August 6, 1840, from her father, accrued, at the latest, July 3, 1849, when Mrs. Raynor went into possession of the land under her deed. October 31, 1852, the plaintiff became of age, was then unmarried, and so remained until 1865, since which she has been a married woman. May 6, 1870 (chap. 741, Laws of 1870), the exception theretofore existing in the statutes of limitation in favor of married women was abolished. Thirteen years elapsed between the date when she arrived at full age and the date of her second marriage, and sixteen years elapsed between 1870 and the date of the commencement of the action. Thus it appears that for more than twenty-nine of the thirty-seven years which elapsed between the date when the plaintiff's right of action accrued, and the date of the beginning of this action she has been able to sue,

and no exception in her favor has existed in the statutes of limitation. The plaintiff's counsel does not contend in his points that a recovery can be had for this twelfth, and his contention at the bar of the court was put *pro forma*. The statute of limitations are a bar to the plaintiff's right to recover this twelfth interest. (Old Code, §§ 78–81, 101.) George Pomeroy never acquired an estate by the curtesy, because his coverture began after an adverse possession had begun, and ended during its continuance. (*Parker* v. *Carter*, 4 Hare, 400, 416; *Den* v. *Demarest*, 21 N. J. L. [1 Zab.], 525; *Jackson* v. *Jackson*, 5 Cow., 74, 98; *Adair* v. *Lott*, 3 Hill, 182, 186; *Ferguson* v. *Tweedy*, 43 N. Y., 543, 548; *Gibbs* v. *Esty*, 22 Hun, 266; *Mercer's Lessee* v. *Selden*, 1 How. U. S., 37, 54; 4 Kent's Com., 30; 1 Wash. R. P. [4th ed.], 173; Williams R. P. [12th ed.], 228.) It follows that upon the death of Julia Pomeroy, November 5, 1859, her twelfth descended equally to this plaintiff and Charles Hargin, subject to a life estate in favor of Mary C. Hargin, their mother, and upon the death of Charles Hargin, July 12, 1861, his interest (three twenty-fourths) descended to this plaintiff, subject to a life estate of said Mary C. Hargin, her mother. (2 R. S., 752, § 6.)

October 16, 1885, Mary C. Hargin " quit-claimed and released " her life estate (in the two-twelfths which descended from Julia and Charles) to this plaintiff, who insists that her life estate merged in the remainder, and that she has a present right to recover said two-twelfths. To this the defendant makes several answers, among which are : (1.) That defendant had acquired title to the mother's life estate by adverse possession long before the date of her release or grant to the plaintiff. (2.) That the instrument executed by the mother to this plaintiff is a grant, and void under 1 Revised Statutes, 739 (§ 147), which provides : " § 147. Every grant of land shall be absolutely void if, at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor."

Mary C. Hargin has been at all times, since the deaths of Julia and Charles, competent to sue for the recovery of her life estate, and no exception has existed in her favor in the statutes of limitation. More than twenty years having elapsed between those deaths and her release or grant, her right to recover her life estate from this defendant (which has occupied the land since September 3, 1859,

under a grant claiming to own it) was barred at the date of her release or grant to the plaintiff. This proposition the plaintiff's counsel does not, we think, dispute, but contends that by the release or grant the plaintiff acquired the same right of action that she would have acquired had her mother died at the date of the release or grant. This brings us to the question whether this defendant had acquired title by adverse possession to the mother's life estate at the date of her release or grant.

It is interesting and instructive to follow the history of the statutes of limitation since the statute of Merton, and trace the changes in the views of courts and text-writers upon the much-debated question, whether title can be acquired by adverse possession? Bracton, who is supposed to have written during the reign of Henry III, says that title may be so acquired. (1 Bracton [Twist's ed.], 413, 414.) Cruise, who wrote in about 1804 (when the statute of 21 James I was in force), says (vol. 3, title 31, chap. 2, §§ 1, 2), that title cannot be so acquired, and cites _Davenport_ v. _Tyrrel_ (1 Wm. Blackstone, 675; S. C., Lofft, 84). Washburn says title cannot be so acquired. (3 Wash. R. P. [4th ed.], 52.) The thirty-fourth section of chapter 27 of 3 and 4 William IV, passed July 24, 1833, provides: "§ 34. And be it further enacted that, at the determination of the period limited by this act, to any person for making an entry or distress, or bringing any writ of _quare impedit_, or other action or suit, the right and title of such person to the land, rent or advowson for the recovery whereof, such entry, distress, action, or rent, respectively, might have been made or brought within such period, shall be extinguished."

Under this statute it has been uniformly held that adverse possession, continued during the time within which an action must be brought, divests the title of the true owner, and vests it in the person who has held it adversely. (_Incorporated Society_ v. _Richards._ 1 Drury & Warren, 258, 289; S. C., 4 Irish Eq., 177, 197; S. C., 1 Connor & L., 58, 85; _Scott_ v. _Nixon_, 3 Drury & Warren, 388; S. C., 6 Irish Eq., 8; _Dixon_ v. _Gayfere_, 17 Beav., 421; _Dundee Harbor Trustees_ v. _Dougall_, 1 Macq. Scotch App. [H. L. Cas.], 317; Darby & Bros. on Lim., chap. 15; Digby's Hist. L. R. P. [2d ed.], 392.) For a history of the English statutes, see Reeve's History (Fin. ed., vol. 2, 38; vol. 3, 310.) This precise question has not been expressly determined by the

Court of Appeals, but this court, following the expressions and assumptions of several reported cases, has held that title to real estate can be acquired by adverse possession. (*Birdsall* v. *Cary*, 66 How. Pr., 358, 366; *Eldridge* v. *City of Binghamton*, 42 Hun., 202, 204.)

Leaving the discussion of the difference between the statutes of limitation, under which the reported cases have arisen, to the court of last resort, which must ultimately decide this precise question, this court is constrained, by the precedents, to hold that, under the statutes of limitation of this State, title may be acquired by adverse possession; and that under this rule, the life estate of Mary C. Hargin had vested in the defendant prior to her release or grant to this plaintiff. This defeats the plaintiff's present right to recover any interest in, or part of the land in dispute, and renders it unnecessary to consider whether the instrument executed by Mary C. Hargin is a release, or grant, and void by the section of the statute above quoted, known as the statute against champerty. Neither is it necessary to determine whether the defendant is a mortgagee in possession; nor is it necessary to discuss the exceptions taken to the rulings upon the admission and rejection of evidence bearing upon this question; for we have assumed that the foreclosure did not divest the title of the owners of the equity of redemption.

The judgment is affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.