# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 29, 1905.

CUMBERLAND DUGAN
VS.
THE MAYOR AND CITY COUNCIL OF BALTIMORE, E. CLAY TIMANUS, MAYOR; SHERLOCK SWANN, CHARLES K. LORD, JOHN T. GRAHAM AND JOHN W. SNYDER, "THE BURNT DISTRICT COMMISSION."

*Bernard Carter, Ferd. C. Dugan* and *James H. Preston* for plaintiff.

*Edgar Allan Poe* and *Joseph S. Goldsmith* for defendants.

SHARP, J.—

The bill in this case was filed by the plaintiff as one of the heirs-at-law of Cumberland Dugan, deceased, and as a resident in and taxpayer of the State of Maryland against the city of Baltimore and the "Burnt District Commission" to obtain an injunction restraining the defendants from entering into any agreement with the State of Maryland to purchase a lot of ground on Dugan's Wharf.

The bill alleges that the lot referred to was formerly owned by Cumberland

Dugan, the ancestor of the plaintiff; that in 1826 the State acquired title to the property by condemnation for the purpose of establishing a State Tobacco Warehouse for the storage and inspection of tobacco; that the property was so used for a number of years; that recently the State has rented the premises to certain individuals for purposes entirely different from those for which the property was originally taken and being no longer used for the storage and inspection of tobacco, for which it was taken, or any use substantially the same, the easement acquired by the State expired with such discontinuance and the title vested in the heirs-at-law of Cumberland Dugan (the elder).

It is further alleged that the State is about to sell the property to the Mayor and City Council of Baltimore, to be used for the contemplated improvement of docks in the "Burnt District," whereby there is danger the money contributed by the plaintiff and other taxpayers will be misapplied and the taxes increased. The bill prays that the defendants may be enjoined from entering into any contract with the State of Maryland for the purchase of the lot, and for other relief.

The answer of the defendants requires proof of the facts alleged in the bill, and denies the plaintiff's contention that the State acquired only a defeasible title, and claims that the State, by the condemnation proceedings, acquired an absolute fee-simple title.

The general replication was filed and testimony taken in open court under the 35th rule.

It appears from the evidence that the plaintiff is a resident in and a taxpayer of the State of Maryland, and a lineal descendant of Cumberland Dugan (the elder). The property in question was acquired by Cumberland Dugan (the elder), by deed from Margaret West et al., dated September 12, 1796.

By the Acts of 1825, Chapter 159, the Governor and Council of the State were authorized and directed to purchase a suitable building, or to buy a lot and erect such building, for the storage and inspection of tobacco.

The property referred to in the bill was selected, together with adjoining property belonging to other persons, as suitable lots for the purpose. Being

unable to agree with Mr. Dugan about its purchase, the Governor and Council recommended that the property be condemned. Accordingly, the Act of 1826, Chapter 250, was passed, providing for its condemnation. The property was condemned pursuant to the Act the State took possession, erected a warehouse for the storage and inspection of tobacco, and has used the property continuously for that purpose until recently. The fire of February, 1904, destroyed all the buildings in this locality, including the tobacco warehouse. It is conceded that the State does not intend to rebuild the warehouse or to use the property any longer for the storage or inspection of tobacco, but intends to convey it to the Mayor and City Council of Baltimore, to be used in the contemplated improvement of the docks. It was agreed at the hearing that the single question presented to this court for determination is the right of the State to convey the property to the city of Baltimore for the use intended. Any objections to the jurisdiction and procedure are waived.

It is contended for the plaintiff that the property was taken by the State under the power of eminent domain for the single purpose of a place for the storage and inspection of tobacco, and though the State may have in form taken a fee-simple, it was on the implied condition that the property should be used for the storage and inspection of tobacco and for no other purpose, and that the State having abandoned this use of the property it reverts to the original owner or his heirs.

The defendants contend that the State acquired an absolute fee-simple which it can sell or dispose of as completely as a private individual could do holding property by a similar title.

There can be no doubt that the State may acquire property in fee-simple under the right of eminent domain while the taking may be for a particular public purpose the title may be taken in fee and the property thereafter used for any other public purpose or sold if the public interests require such disposition. The State can take the private property of its citizens for public purposes only. The right to condemn is co-extensive with the necessities of the case. While in some cases the entire title may be required in others a lesser estate will answer the

purpose. The Legislature is the conclusive judge of the necessity for the taking and the quantity of estate to be taken.

This question has not yet been decided in this State. The authorities elsewhere are numerous and controlling.

In the case of Rexford vs. Knight, 11 N. Y. 308, land was condemned for a canal, afterwards the route was changed and the property no longer used as a canal.

The original owner claimed a reverter. It was held by the Court of Appeals of New York that the State took a fee-simple, and that the original owner had no title.

The case of Brooklyn Park vs. Armstrong, 45 N. Y. 234, is one of the leading cases in the country on this subject. Land was condemned as a public park. The land taken was pledged for the payment of bonds issued by the city of Brooklyn for the purchase money. Subsequently part of the land taken was sold and the proceeds appropriated to the sinking fund provided for the payment of the bonds. The purchaser of part of the land refused to take title, claiming that neither the State or the city of Brooklyn could give a good title. It was held by the Court of Appeals that the city took an absolute fee-simple. Specific performance was decreed.

Sweet vs. Buffalo, 79 N. W. 293. The act gave the city of Buffalo a right to condemn a sea wall, which was accordingly done. The city gave a railroad a right to lay a track on the land taken. The original owner then claimed an abandonment by the city and a reverter. It was held that the title of the owner was completely divested by the condemnation proceedings, and that the city took a fee-simple title with full power of disposition. Full compensation was paid and there was no reverter.

Tifft vs. Buffalo, 82 N. Y., 204. Property was conveyed by deed to a turnpike company. The deed stated the use for which the property was conveyed but contained no condition. The turnpike company was afterwards dissolved and the city used the property as a street. It was held that the fee passed by the condemnation proceedings and there was no reverter.

Brooklyn vs. Copeland, 106 N. Y., 496. Land was condemned for a park. Afterwards the land was sold. The purchaser refused to take title on the ground that the use for which it was taken having been abandoned there was a reverter. The Court of Appeals decided that the city took a fee-simple which it could convey. Specific performance was decreed.

Eldridge vs. Binghampton, 120 N. Y., 309. Land was condemned for a canal. Subsequently the canal was abandoned. The State conveyed the land taken to the city of Binghampton, by whom it was used as a street. It was held the State could sell, that it took a fee-simple absolute, the Legislature was the sole judge of the extent of title required.

See also Hoover vs. Utica, 12 Wend., 371.

People vs. White, 11 Barb., 26.

Eldridge vs. Binghampton, 42 Hun., 202, afterwards affirmed by the Court of Appeals (ante).

Birdsall vs. Cary, 66 How. Pr., 358.

Heyward vs. New York, 8 Barb., 486. Land was condemned by the State of New York for an alms house under a statute similar to ours. The State conveyed the property to the city of New York, which used it as an alms house for some years, and then sold it. It was held that the title vested in the State in fee, the State could lawfully sell to the city, and the city could give a good title to the purchaser. The cases in Ohio are particularly instructive.

Malone vs. Toledo, 28 Ohio St., 643, decided in 1875. The State condemned land for a canal. Afterwards the canal was abandoned and the State conveyed the property to the city of Toledo, which used the property as a street. The precise arguments were made on both sides by counsel in that case as in the present. It was held that the State may take such a title as it needs, and that once taken for any purpose it may be used for any other. The court added that if the land should be conveyed to a private party a different case would arise, which would be decided when it arose.

In 1878 the case suggested did arise. Malone vs. Toledo, 34 Ohio St., 541. The city of Toledo sold the property in fee-simple. The Court of Appeals then decided the State took a fee-simple absolute, which it conveyed to the city of Toledo, which could make any disposition of the property it pleased.

The same question has been decided in Pennsylvania.

Haldeman vs. P. Rd., 50 Pa., 425. Land was condemned as a canal. The State sold to the P. R. R. It was held State took a fee and could sell.

Craig vs. Allegheny, 53 Pa. St., 477. The land was condemned for the same purpose. The canal was abandoned. It was held the land did not revert to the original owner.

The same thing was held in Robinson vs. W. P. R. R., 72 Pa. St., 316, and in Wyoming vs. Price, 81 Pa. St., 156.

In Nelson vs. Fleming, 56 Ind., 310, the State took land by condemnation for a canal. The proceedings for the condemnation were lost. Afterwards the canal was abandoned. Trustees were appointed for the canal and it was sold. It was held there was a presumption, the proceedings were regular, that the State took a fee and that the purchaser at the sale took a good title in fee-simple and there was no reverter.

Frank vs. E. & S. R. R., 111 Ind., 132.

Land was condemned for a canal. Afterwards the canal was abandoned and the land sold. The purchaser undertook to build a railroad on it. Held he took a fee-simple and there was no reverter when canal was abandoned.

Dingley vs. City of Boston, 100 Mass., 555.

Fairchild vs. City of St. Paul, 46 Minn., 440.

Cooley's Constitutional Limitations, 7th Ed., p. 808.

I Hare on "Constitution," 367-415.

Lewis on "Eminent Domain," Sec. 596, &c.

10 Ency. of Law, 2nd Ed., p. 1198, U. S.

These authorities determine that the State has the power under the eminent domain to take for a public purpose any estate in land which may be needed. There is no implied condition in every such taking that the property shall revert to the original owner if used for a different purpose than that for which it was taken. There may or may not be a reverter according to cir-

cumstances. The estate taken is a matter to be determined in each particular case.

There are great practical difficulties in the way of any other rule. It does not appear just or reasonable in the absence of an express agreement that the owner of property who had been paid its full value should get it back again perhaps with improvements worth more than the property without returning the purchase money or any part of it, because of some unexpected change in the plans of the purchaser. On the other hand, it would be very unjust when property is taken for a purpose, apparently permanent, to pay the owners less than its full value because of some possible advantage which may accrue to him or his remote descendants.

This being true, the only question remaining to be decided is the character of the title acquired by the State of Maryland by the condemnation in 1826. This question depends entirely on the construction of the Act of 1825, Chapter 159, and the Act of 1826, Chapter 250, and the condemnation proceedings conducted pursuant to the last mentioned act.

The language of the Act of 1825 is not clear as to the character of title to be acquired. It provided that the Governor and Council were "to purchase" a suitable building, or to "purchase a lot of ground in the most convenient part of the city upon which to erect said building, and to have the said lot conveyed to the State." It may be that the purchase of a defeasible fee, or even a leasehold, would satisfy the conditions of this act. I do not regard this act, except so far as the expressed purpose for which the property is to be acquired may be considered as at all important in determining the character of title acquired from Mr. Dugan.

The Act of 1826, Chapter 250, providing for the condemnation of the property, provides that the Commissioners appointed shall "value and assess" the land needed. Their decision "shall be final and conclusive as to the actual and correct worth of the land and improvements so valued and assessed."

It is further provided that after the payment of the sum assessed "the State of Maryland shall thenceforward be considered the true and lawful owner and proprietor of the said land or real estate, with the improvements thereon, and all wharves and other appurtenances belonging or appertaining, and all right, title, estate and interest therein at law and in equity shall be vested in said State." Precisely the same language is used in Section 4, in which it is provided that anyone dissatisfied with the decision of the commissioners may appeal to a jury.

This language standing alone admits of only one construction, in my judgment. The State took an absolute fee-simple. The draftsman of the act did not use the technical language of conveyancing, but certainly the intention is clear to take the fee. The owner is to be paid the "actual and correct worth" of the property, and the State is "to become the true and lawful owner and proprietor of the property", and, "all right, title, estate and interest therein at law and in equity shall be vested in said State."

But it is said the purpose for which this property is condemned must be considered in construing the acts referred to, and that the property being taken for a particular purpose the act must be held to contemplate the acquisition of such a title as was required for the particular purpose.

It appears from the cases cited that the purpose for which property is taken is important in determining the character of the title, but it is by no means conclusive.

Brooklyn vs. Armstrong, 45 N. Y., 240.

If the language of the act is doubtful and the purpose clearly a temporary one and the sum paid less than the full value of the property, it may well be held that the title was not an absolute fee-simple, but a less estate, but if full weight be given to this argument it has little force in connection with the facts of this case.

The purpose in taking Mr. Dugan's lot for a tobacco warehouse was evidently not a temporary one. The State had a fixed policy of tobacco inspection which had existed for some years. Permanent and expensive fire-proof buildings were to be erected for the storage and inspection of tobacco, and for all that appears it was contemplated that this use should continue perpetually.

It cannot be inferred from these facts that it was the intention of the Legislature to acquire less than the absolute fee-simple, indeed, as inference to the contrary is more reasonable, particularly when the act provided that the owner should be paid the "actual and correct worth" of his property, "and the State should be considered the true and lawful owner and proprietor," and acquire "all right, title, estate and interest therein at law and in equity."

Brooklyn vs. Armstrong, 45 N. Y., 242.

It should be observed that this is not a case where the State undertakes to sell property taken for a public purpose, to private persons to be used for entirely private purposes. It is conceded that the intention is to convey the property to the city of Baltimore, by whom it will continue to be used for a public purpose.

The proceedings of the commissioners under the Act of 1826, Chapter 250, have been lost, except the plat. It is not shown affirmatively that all the provisions of the act were complied with. It appears from the newspapers of the day, which were in evidence, that the commissioners gave the notice required by the act before assessing the property, and also that they gave the notice of an appeal to a jury.

It also appears from the archives of the "State Proceedings of the Executive of Maryland" that on December 6th, 1827, an order was drawn on the Treasurer of the Western Shore "to pay William Steuart, or order, $40,650 in pursuance of the determination of the jury appointed in virtue of an Act of December Session, 1826, to settle finally the amount of compensation to Cumberland Dugan for tobacco warehouse and lot."

There is a presumption of regularity after such a lapse of time.

In my judgment, the true interpretation of the Acts of Assembly and the condemnation proceedings is that the State took and paid for the absolute fee-simple title. This being true the plaintiff has no right to interfere with any use or disposition the State may make of the property.

It follows from what has been said that the injunction must be refused and the bill dismissed.