(79 N. W. Rep. 448.)

---

JOHN P. BRAY *vs.* LEWIS E. BOOKER, *et al.*

Opinion filed February 16, 1899.

**Vendor's Lien Waived by Taking Collateral Security.**

When, upon the sale of real property, the vendor accepts the vendee's note for a portion of the purchase price, and the vendee, for the sole purpose of enabling the vendor to discount said note at the bank, gives the vendor collateral security for the payment of the note, such security is, nevertheless, given to, and for the benefit of; the vendor, and, under section 4830, Rev. Codes, no vendor's lien upon the realty can be established for the amount represented by such note.

**Promise to Pay Vendor's Notes is Not Payment.**

Where, upon the purchase of real property for a sum certain, the vendee agrees to pay a certain portion of that sum by paying the promissory note of the vendor held by a specified bank, such agreement or promise does not constitute payment, as between the vendor and vendee. If the promise be not performed, the debt for purchase price still exists to that extent, and the vendor may thereafter bring suit against the vendee, and have a vendor's lien upon the realty established for such unpaid portion of the purchase price, and his right to bring such action does not depend upon his precedent payment of his note to the bank, provided his obligation be still outstanding.

**Husband Acting as Agent for the Wife—Notice.**

A husband was indebted to his wife in the sum of $6,000. He promised to purchase a home, and place the title in her name. With her knowledge and consent, he negotiated for and purchased a house and lot, and procured the deed to be made in her name, and delivered the same to her. She received the same in actual ignorance of the terms and conditions of the purchase; but *held*, that the husband was the agent for his wife in making the purchase, and in law she is chargeable with full knowledge of the details of the transaction, and does not occupy the position of an innocent purchaser for value from her husband.

**Conduct Not Amounting to Waiver of Vendor's Lien.**

A vendor may waive his right to a vendor's lien by any language or conduct clearly manifesting an intention to waive the same, but such waiver cannot be presumed from the simple fact that the vendor executed the deed after the vendee had refused to mortgage the property to secure the purchase price, and had stated that he desired to receive the property free from all incumbrances.

Appeal from District Court, Grand Forks County; *Fisk,* J.

Action by John P. Bray against Lewis E. Booker and Katie E. Booker, to established and enforce a vendor's lien for $8,000 and interest, pursuant to section 4830, Rev. Codes. The trial court awarded plaintiff a lien for $3,000, with interest, but held that because plaintiff had taken collateral security for $5,000 of the purchase price of the property he lost his lien to that extent. The plaintiff, Alse J. Gronna, intervener, and the defendants severally appeal.

Affirmed.

*Templeton & Rex* (*Tracy R. Bangs,* of counsel), for plaintiff and appellant.

The bank stock was put up to secure payment of Booker's note to the indorsee, the Merchants' National Bank, and not to Bray. This does not forfeit the right of lien. *Wilson* v. *Lyons,* 51 Ill. 166; *Carey* v. *Boyle,* 11 N. W. Rep. 47; *Barrett* v. *Lewis,* 5 N. E. Rep. 910. When the payee of a note transfers it and remains liable thereon as indorser or guarantor, if he subsequently redeems the note the lien revives. Jones on Liens, § § 1092-1096; *Perkins* v. *Gibson,* 24 Am. Rep. 644; *Green* v. *De Moss,* 10 Hump. 371; *Kelley* v. *Payne,* 18 Ala. 371; *Rogers* v. *James,* 33 Ark. 77; *Turner* v. *Horner,* 29 Ark. 440; *Bancroft* v. *Crosby,* 74 Cal. 583, 16 Pac. Rep. 504. The lien given by Sec. 4830, Rev. Codes, should be in no way restricted by construction. § 5138, Rev. Codes. The lower court properly established a lien for $3,000, that portion of the price unpaid and unsecured. *McCauley* v. *Holz,* 62 Ind. 205. Plaintiff did not lose his right to vendor's lien because of accepting the substituted obligation of Booker to pay his obligations to the Grand Forks National Bank, and the Security Trust Company. *Turpie* v. *Lowe,* 15 N. E. Rep. 834; *Elliot* v. *Plattor,* 43 Ohio St. 198; *Ry. Co.* v. *Lewton,* 20 Ohio St. 401; *DeForest* v. *Holum,* 38 Wis. 516; *McDale* v. *Purdy,* 23 Ia. 277; *Merrill* v. *Allen,* 38 Mich. 487; *Mills* v. *Bliss,* 55 N. Y. 139; 2 Warville on Vendors, 706; *Rice* v. *Sanders,* 152 Mass. 108, 24 N. E. Rep. 1079; *Williams* v. *Crow,* 84 Mo. 298. Bray could maintain an action upon Booker's promise to make these payments, and could enforce the lien as security therefor. *Steene* v. *Aylesford,* 18 Conn. 244; *Piggot* v. *Thompson,* 3 B. & P. 149 n.; *Furnas* v. *Durgan,* 119 Mass. 500; *Locke* v. *Homer,* 131 Mass. 93; *Farnsworth* v. *Boardman,* 131 Mass. 115; *Wicker* v. *Hoppock,* 6 Wall 94; *Valentine* v. *Wheeler,* 122 Mass. 566; *Muhlig* v. *Fiske,* 131 Mass. 110; *Gaffney* v. *Hicks,* 131 Mass. 124; *Reed* v. *Paul,* 131 Mass. 129; *Coffin* v. *Adams,* 131 Mass. 133; *Williams* v. *Fowle,* 132 Mass. 385; *Pierce* v. *Plumb,* 74 Ill. 326; *Mills* v. *Allen,* 133 U. S. 423; *Anoka Lumber Co.* v. *Fidelity C. Co.,* 63 Minn. 286, 65 N. W. Rep. 353; *Churchill* v. *Hunt,* 3 Denio. 321; *Stout* v. *Foulger,* 34 Ia. 71, 11 Am. Rep. 138; *Kohler* v. *Metlage,* 72 N. Y. 259; *Connar* v. *Reaves,* 103 N. Y. 527. The bank and its receiver have by suing Bray repudi-

ated Booker's promise to pay his debt. No action would lie in favor of the bank against Booker for this debt until an acceptance of the agreement, which would amount to a consent by the bank and its receiver that Bray, the original promisee be discharged from his original obligation. *Woods* v. *Moriarity,* 9 Atl. Rep. 427; *Warren* v. *Batchelder,* 16 N. H. 580; *Bohanan* v. *Pope,* 42 Me. 93. Some word or act is essential to show an acceptance or adoption by the creditor of the substituted promise. *Dimick* v. *Register,* 9 So. Rep. 79; *Wheat* v. *Rice,* 97 N. Y. 296; *Dunning* v. *Leavitt,* 85 N. Y. 35; *Crowe* v. *Lewin,* 95 N. Y. 423; *Turk* v. *Sidge,* 41 N. Y. 206; *Moore* v. *Ryder,* 65 N. Y. 438; *Crowell* v. *Currier,* 27 N. J. Eq. 152; *Trimble* v. *Strother,* 25 O. St. 378; § 3840, Rev. Codes. But the contract was not made expressly for the benefit of the bank or the trust company, and therefore they could not maintain an action thereon against Booker. § 3840, Rev. Codes; *Pardee* v. *Treat,* 82 N. Y. 385; *Beveridge* v. *Ry. Co.,* 112 N. Y. 26. This agreement was made for plaintiff's benefit and it is not sufficient that it might incidentally benefit the third parties named. *Parlin* v. *Hall,* 2 N. D. 473; *Am. Exc. Nat. Bk.* v. *Ry. Co.,* 76 Fed. Rep. 130; *Austin* v. *Seligman,* 18 Fed. Rep. 519; *Crandell* v. *Payne,* 39 N. E. Rep. 601; *Constable* v.*Nat. Steamship Co.,* 154 U. S. 51; *Savings Bank* v. *Thornton,* 44 Pac. Rep. 466; *Wright* v. *Terry,* 2 So. Rep. 6; *Sayward* v. *Dexter, Horton & Co.,* 72 Fed. Rep. 758; *Chung Kee* v. *Davidson,* 15 Pac. Rep. 100. The burden is upon defendants to prove waiver, if in doubt the court should sustain the lien. *Crampton* v. *Prince,* 3 So. Rep. 519; *Manley* v. *Slason,* 21 Vt. 271, 52 Am. Dec. 60; *Wilson* v. *Lyon,* 51 Ill. 166; Story Eq. Jr. § 1224; *Maroney* v. *Boyle,* 141 N. Y. 462, 36 N. E. Rep. 511. No consideration moved from Mrs. Booker to the plaintiff, she was not a bona fide purchaser for value, but a mere volunteer, and plaintiff can enforce his lien against the property. *Pylant* v. *Reeves,* 25 Am. Rep.605, 53 Ala. 132; *Crampton* v. *Prince,* 3 So. Rep. 519, 3 Am. St. Rep. 718; *Davis* v. *Smith,* 7 So. Rep. 159; *Davenport* v. *Murray,* 68 Mo. 198; *Pratt* v. *Eaton,* 65 Mo. 157; *Hunt* v. *Marsh,* 80 Mo. 396; *Williams* v. *Crow,* 84 Mo. 298. The fact that Bray deeded to Mrs. Booker, at the request of her husband, with whom the contract was made, does not alter the situation. Jones on Liens, § 1084; *Taylor* v. *Alloway,* 3 Litt (Ky.) 216; *Davis* v. *Pearson,* 44 Miss. 508; *Humphrey* v. *Thorne,* 63 Ind. 296; *Baker* v. *Gilbert,* 93 Ind. 70; *Burgers* v. *Fairbanks,* 23 Pac. Rep. 292.

*John A. Sorley,* also *Cochrane & Corliss,* for respondents and intervener.

Bray discounted the $5,400 note to the Merchants' National Bank. He transferred the note absolutely and not by way of pledge, and thereby destroyed his lien to this extent. § 4831, Rev. Codes; *Moshier* v. *Meek,* 80 Ill. 79; *Elder* v. *Jones,* 85 Ill. 384. A vendor's lien has never been placed upon any substantial basis of principle. 2 Jones on Liens, § 1063; 28 Am. & Eng. Enc. L. 159; *Frame* v. *Sliter,* 45 Pac. Rep. 290. A vendor's lien cannot be assigned. 2

Jones on Liens, § 1092. The taking of additional security waives the lien. 2 Jones on Liens, § 1086. It is such an insubstantial and shadowy equity that the lien of a subsequent creditor will prevail against it. *Bayley* v. *Greenleaf,* 7 Wheat. 46; *Meckreth* v. *Symmons,* 1 Lead. Cases in Eq. 373; *Bray* v. *Booker,* 6 N. D. 526. The lien is opposed to the general policy of our registration statutes. Pomeroy Eq. § 1250 and n.; 2 Jones on Liens, 1063; *Frame* v. *Sliter,* 45 Pac. Rep. 290; *Hammond* v. *Peyton,* 27 N. W. Rep. 72. It would seem therefore that one who asserts a vendor's lien is not entitled to any special favor from the courts. *Kauffelt* v. *Bower,* 7 Serg. & Rawle, 64. Real and personal property were sold together for a lump sum. No price was agreed upon for the real estate, hence it cannot be determined for what sum a lien can be allowed. 2 Jones on Liens, § 1072; *Stringfellow* v. *Joe,* 73 Ala. 207; *McCandlish* v. *Keen,* 13 Grat. 615; *Peters* v. *Tunell,* 43 Minn. 473; *Griffin* v. *Byrd,* 19 So. Rep. 717; *Wilkinson* v. *Palmer,* 83 Ala. 367; 28 Am. & Eng. Enc. L. 166. Plaintiff took in place of $3,000 cash Booker's promise to pay the debts of Bray owing to the Security Trust Company and the Grand Forks National Bank. A vendor's lien cannot be sustained as security for this substituted obligation. 2 Jones on Liens, § 1074; 3 Pom. Eq. Jr. 1252; *McKillip* v. *McKillip,* 8 Barb. 552; 2 Devlin on Deeds, § 1256; 1 Lead. Cas. in Eq. 355; *Paterson* v. *Edwards,* 29 Miss. 71; *Chapman* v. *Beardsley,* 31 Conn. 115. When as part of the transaction Booker agreed to pay the notes held by these corporations against Bray, he became liable therefor under the rule that a third person may sue upon such a promise as being made for his benefit. *Wager* v. *Link,* 150 N. Y. 549; *Alvord* v. *Spring Valley,* 40 Pac. Rep. 27; *Williams* v. *Zaftzer,* 37 Pac. Rep. 411; *Keller* v. *Ashford,* 133 U. S. 622; *Moore* v. *Booker,* 4 N. D. 543; *Dean* v. *Walker,* 107 Ill. 540; *Pugh* v. *Barnes,* 19 So. Rep. 370; *Redelsheimer* v. *Miller,* 107 Ind. 485. In California under a statute similar to § 3840, Rev. Codes, it is held that the assumption by a person of a debt owing to a third party renders the promisor liable to such third party for the debt. *Williams* v. *Zaftzer,* 37 Pac. Rep. 411; *Alvord* v. *Spring Valley,* 40 Pac. Rep. 27. A lien cannot be established as security for damages resulting from a breach of a covenant made by the vendee. *Whitely* v. *Central Trust Co.,* 76 Fed. Rep. 74; *Peters* v. *Tunell,* 43 Minn. 473; *Harris* v. *Haine,* 37 Ark. 348; *Arlin* v. *Brown,* 44 N. H. 102; *Chapman* v. *Beardsley,* 31 Conn. 115; *Patterson* v. *Edwards,* 29 Miss. 71. And where the vendor accepts as part of the purchase price the promise of the vendee to pay to third persons debts owing them by the vendor, no lien exists. *Patterson* v. *Edwards,* 29 Miss. 71; *Chapman* v. *Beardsley,* 31 Conn. 115; *Harvey* v. *Kelly,* 93 Am. Dec. 267; 28 Am. & Eng. Enc. L. 165. Any conduct which evinces a purpose not to look to the land for payment is sufficient evidence of waiver. *Orrick* v. *Durham,* 79 Mo. 174; 2 Jones on Liens, § 1073; 2 Warville on Vendors, 713; *Moshier* v. *Meek,* 80 Ill. 79. Taking collateral for a portion of

the purchase price is fatal to a claim of a vendor's lien, not only for the portion secured but also for the remainder. I Lead. Cas. in Eq. 356; 2 Jones on Liens, § 1087; *Bond* v. *Kent,* 2 Vern. 281; *Orrick* v. *Durham,* 79 Mo. 174; *Briscoe* v. *Callaghan,* 77 Mo. 134; *Calaiborne* v. *Castle,* 32 Pac. Rep. 807. Mrs. Booker was a bona fide purchaser and took the land free of any lien. *Wert* v. *Naylor,* 93 Ind. 431; *Adams* v. *Vanderbeck,* 47 N. E. Rep. 24; *Butterfield* v. *Pitcher,* 36 N. J. Eq. 482; *Bunn* v. *Schnellbacher,* 45 N. E. Rep. 227; *Adams* v. *Vanderbeck,* 45 N. E. Rep. 645; *State Bank* v. *Frame,* 20 S. W. Rep. 620; *Heath* v. *Selverthorn,* 39 Wis. 146; *Mayer* v. *Heidebach,* 123 N. Y. 332. The real party in interest is the Merchants' National Bank and not Mr. Bray in whose name the action is being prosecuted. *Elder* v. *Jones,* 85 Ill. 384, 387.

BARTHOLOMEW, C. J. This action was brought to establish and forclose a vendor's lien, in the amount of $8,000, upon a house and lot in the City of Grand Forks. There was a decree establishing the lien to the extent of $3,000 and no more. All the parties appeal,—plaintiff because the lien was not established for the full amount claimed; and defendants and the intervener because a lien was established for any amount. The defendants and intervener first perfected their appeal, and will be known as appellants in this Court. The intervener may, for convenience, be dropped from our consideration. He was a subsequent vendee, and took with full knowledge of all of respondent's rights in the property, if he have any such rights. There is no very serious conflict in the testimony, and we may make a general statement of facts, leaving the controverted points for special mention when reached.

On and prior to September 31, 1895, the respondent, Bray, was the owner in fee of the real estate in question; also of some household furniture in the house; and of 82 or 83 shares of stock of the Grand Forks National Bank, of the face value of $100 per share. The appellant Katie E. Booker was the wife of the appellant Lewis E. Booker. Said Lewis E. Booker was the president of said Grand Forks National Bank. He was indebted to Katie E. Booker in the sum of $6,000; that sum having been placed in his hands as trustee for his wife soon after their marriage, in 1873. At one time that money had been invested in a home at Pembina, in this state. That home was sold, with the understanding that a new home should be acquired, and the title placed in Mrs. Booker. On said September, 31, 1895, and as a result of negotiations that had been pending for some days between the respondent, Bray, and appellant Lewis E. Booker, Bray sold to Booker the said house and lot; also the furniture in the house, which was valued at $600; and also the shares of stock of the said Grand Forks National Bank owned by Bray. For this property Booker agreed to pay as follows: He would execute to Bray his promissory note for $5,000, due in one year; he would pay two certain notes held by the Security Trust Company against Bray, aggregating $800, without counting accrued interest, and also two promissory notes held by the Grand

Forks National Bank against Bray, aggregating $5,750, without counting accrued interest,—making the total consideration $11,550, with whatever interest may have been accumulated on the notes. Bray was anxious to negotiate the note that he was to receive from Booker, and testifies that he would not have made the trade unless he could negotiate the note. Booker undoubtedly knew that fact. A few days before the deal was consummated Bray called upon one McLaurin, who was cashier of the Merchants' National Bank of Grand Forks, and asked him if be would discount Booker's note for $5,000. McLaurin replied that he would not. Subsequently Bray asked him if he would discount Booker's note for $5,000 if he (Bray) would guaranty it. McLaurin replied that he would not. At that time Mr. Bray informed the cashier how he expected to obtain Booker's note, and McLaurin suggested that, if Booker would give a mortgage on the real property securing the note, he (McLaurin) would discount it. This fact was communicated to Booker, but he refused to give any mortgage, but stated that he would turn over, as collateral to said note, stock of the Grand Forks National Bank owned by him of the face value of $5,000. This fact was, in turn, communicated to McLaurin, who said he would discount the note thus secured, and thereupon the deal was closed. Booker executed his note for $5,000, payable to Bray, and delivered to him the certificates of bank stock, as agreed, as collateral thereto; and also delivered to Bray a writing whereby he assumed the payment of the notes, as herein recited. At the request of Lewis E. Booker, the deed for the real estate was made direct to Katie E. Booker, the consideration therein being stated at $8,000. Bray delivered to Booker his certificates of bank stock. The next day Bray presented said note, with the collateral, at the Merchants' National Bank, and delivered the note, indorsed in the usual course of business, and the collaterals, to the cashier, McLauren, who discounted the same, and paid Bray the cash thereon. Katie E. Booker knew beforehand that her husband was negotiating with Mr. Bray for the purchase of this real estate for her and as a home, but had no knowledge, when the deed was delivered to her by her husband, of any of the terms of the purchase, or that the property was not fully paid for. Lewis E. Booker paid the notes held by the Security Trust Company against Bray, but failed to pay the notes held by the Grand Forks National Bank against Bray, either in whole or in part. At the maturity of said notes, Bray gave his own note in renewal thereof, and Lewis E. Booker guarantied the payment in writing on the back of the note. As to the bank, Bray was the principal debtor, but, as between Bray and Booker, the latter was the principal debtor. Soon after this transaction the Grand Forks National Bank was placed in the hands of a receiver, where it still remains. Such receiver has brought suit against Bray alone to recover the amount of said note. Neither did Booker pay the $5,000 note nor any part thereof. Shortly before the institution of this suit, Bray took up said note by giving the Mer-

chant's National Bank his own note therefor, and it is one of the evidences of indebtedness upon which he bases his right of recovery.

We address ourselves first to plaintiff's appeal, and in considering it we assume that the price of the real estate, as fixed by the parties in their negotiations, was $8,000. In so far as this purchase price was represented by the note for $5,000, the trial court refused to establish a vendor's lien, upon the ground that the vendor had taken security other than the personal obligations of this vendee. Section 4830, Rev. Codes, reads: "One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." There is no question of law involved in this branch of the case. Counsel for respondent frankly concede that, if he accepted security upon the note, he waived the right to a vendor's lien. But they insist that, under the facts as stated, he never accepted or received any security, that the bank stock which was pledged as collateral to the notes was so pledged solely at the request and for the benefit of the Merchants' National Bank; that the collateral was in fact received by the bank; and that, if it passed through respondent's hands, it was simply in his capacity as agent for the bank. To this we cannot accede for a moment. Booker was not buying any property from the bank. He owed it no debt. It was a matter of entire indifference to him whether his note was negotiated or not. Its negotiation would not benefit him. Not so with Bray. He wanted cash. He testifies that he would not make the trade until he knew he could discount the note, and that he could not discount it unless it was secured. In other words, the effect of his testimony was that he offered to sell his property at a certain price, and accept a note for part of the purchase price, provided the note was secured, and Booker accepted his terms. We do not discover how it could possibly make any difference in the legal effect of the transaction whether Booker knew or did not know why Bray wanted the security,—whether to enable him to discount it, or for greater security in his own hands. In this instance, he did know it. But suppose all the facts to have existed just as they did exist, with the exception that Booker knew nothing of Bray's efforts to discount the note. The security would have been given for the same purpose, in either case, *i. e.* to enable Bray to negotiate the note, and would have been given for the same reason in either case, *i. e.* because the bank refused to discount the note unless it was secured. The security would be given at the demand of the bank, or for the benefit of the bank, just as much in the one case as the other. Yet it would be almost absurd to say that Booker gave the security to the bank when he was ignorant of the contemplated negotiation. Bray himself received the security, and he received it for his own bene-

fit, and that benefit he received when he presented the note and security at the bank's counter, and received the cash thereon. While these indisputable facts exist, it is idle for a witness to testify to the conclusion that the security was given at the request and for the benefit of the bank. We are entirely clear that the trial court was correct in holding that the respondent had received security for the note in question "otherwise than by the personal obligation of the buyer." This view disposes of plaintiff's appeal, and renders it entirely unnecessary for us to discuss that very interesting question, so ably presented by counsel, whether or not a vendor of realty, who takes a promissory note from the buyer and regularly transfers the same to a third party by indorsement, can by subsequently taking up the note, establish a vendor's lien for the amount upon the realty sold.

The defendant's appeal is much more involved. A question of fact meets us at the threshold of its consideration. In the transaction, was any definite price fixed upon the realty? Appellants contend that there was not, but that the real estate and bank stock were sold for a lump sum, and that, as no price was fixed upon the realty, no vendor's lien can be established against the same for any sum whatever. This contention is based upon the rule announced in 2 Jones, Liens, 1072, and 28 Am. & Eng. Enc. Law, 166. But we reach the conclusion that the rule is not applicable in this case. The evidence concerning the price fixed upon the realty is very evenly balanced. The respondent testifies with positiveness and repeatedly that it was fixed at $8,000. In this he is corroborated by the fact that such was the consideration named in the deed. Appellant Lewis E. Booker testifies that no price was fixed on the realty; that it was a lump sale for a lump sum. Proof was also introduced of an alleged admission made by respondent that such was the case. But admissions of this character constitute a weak class of evidence, depending, as they do, upon the recollections of spoken words, and are always received by a chancellor with caution. This is peculiarly an instance where the decision of the trial judge, before whom the witnesses appeared, should have weight in this Court. We accept that court's finding upon this point.

But, accepting it as a fact that the price of the realty was fixed at $8,000, appellants say that $5,000 thereof was represented by the note already disposed of, and that for the remaining $3,000 respondent accepted the promise of Lewis E. Booker to pay certain of respondent's outstanding indebtedness, and that, if Booker has failed to pay such indebtedness, respondent has his right of action against him for breach of contract, but that his recovery would sound in damages, and would not represent purchase price that could support a vendor's lien. In support of this position, we are cited to *McKillip* v. *McKillip*, 8 Barb. 552. There is perhaps a little broad language on page 560, but the case was this: In consideration of the conveyance of certain real estate, the grantee executed his bond conditioned for the support of the grantor and his son. After

the death of the grantee, an action was brought against his estate upon the bond, by one who had furnished support to the grantor and his son, to recover the value of such support, and establish the same as a vendor's lien upon the real estate transferred. The lien was denied, and correctly so, under all the authorities. In no case has a vendor's lien been established when the vendee, as the consideration for the transfer, has undertaken to perform some act beneficial to the grantor, but the value of which was uncertain or shifting. The lien extends only to purchase price, and cannot exist where no purchase price is definitely fixed in money. The lien, if established at all, must be established for so much money. If the consideration be payable in any commodity other than money, no lien can attach. 3 Pom. Eq. Jur. § 1251; 28 Am. & Eng. Enc. Law, 165; *Hudelson* v. *Wilson,* 40 Ill. App. 29. In this case the consideration was the grantee's promise to act as minister in a certain church. *Peters* v. *Tunell,* 43 Minn. 473, 45 N. W. Rep. 867. Here a portion of the consideration was the support of the grantor. *Harris* v. *Hanie,* 37 Ark. 348. In this case the consideration was cotton to be delivered. *Arlin* v. *Brown,* 44 N. H. 102. This was also a case where the consideration was the future support of the grantor. This is undoubtedly the general rule, with a possible exception in Alabama. *Coal Co.* v. *Long,* 91 Ala. 538, 8 So. Rep. 765. The courts have never confounded purchase price with damages for breach of a covenant that has been accepted as consideration for the grant. To what extent will this principle aid appellants?

A proper answer to this interrogatory requires a consideration of several other principles. In this case the entire consideration was money, and there was no indefiniteness as to the amount. For the purpose of the point we are now considering, Lewis E. Booker owed the respondent $3,000 as a part of the purchase price of said real estate. He promised to pay that indebtedness in a certain manner, to-wit: by paying respondent's indebtedness to that amount to the Grand Forks National Bank. He failed to keep his promise. In cases of this character, courts of equity have not generally made the technical discrimination between purchase price and damages that they have when the promise was to do some act of uncertain value; and for the very good reason that, in cases of this class, the damages for the breach are always and necessarily, in legal contemplation, measured by the amount which the grantee promised to pay, and did not; and, as the unpaid purchase price and the damages must be the same in every case of this kind, a court of equity, recognizing the injustice of permitting a grantee to hold the real estate without paying for it, is not inclined to permit him to reap any advantage from what, at most, is but a barren technicality. See 2 Warv. Vend. 706; *Elliott* v. *Plattor,* 43 Ohio St. 198, 1 N. E. Rep. 222; *Rice* v. *Sanders,* 152 Mass. 108, 24 N. E. Rep. 1079.

But there is another, and, to us, more satisfactory, ground upon which a vendor's lien, to the extent of $3,000, may be upheld in

this case. What was the legal effect of the promise of Lewis E. Booker to pay respondent's notes? It must be remembered that he owed the respondent, and that this was not a case of novation, where the bank accepted Booker as paymaster and released respondent. The bank was not a party to the transaction. Booker promised to pay his debt to respondent in a particular manner. But it was only a promise. It was not payment. Had he promised respondent, in form of a promissory note, to pay the debt at a future day certain and failed to pay when time for performance arrived, respondent would not have sued in damages for breach of contract, but would have sued upon the original debt, which the promise did not extinguish, but of which it was the evidence. Upon what logic did his promise to pay to a third party at a future day extinguish the debt? Appellants will say because such third party might adopt and enforce said promise at any time before it was ·rescinded by the original parties. That is true, under our statute. Rev. Codes, § 3840; *Moore* v. *Booker,* 4 N. D. 543, 62 N. W. Rep. 607. As the matter is here governed by statute, we need not cite the cases where this has been held as a common-law doctrine. Some of them are cited in *Moore* v. *Booker,* supra, and they show that the promise is simply the agreement of the promisee to pay his own debt in a particular manner. Our statute is the same as that of California; and see *Williams* v. *Naftzger* (Cal.) 37 Pac. Rep. 411; *Alvord* v. *Gold Co.* (Cal.) 40 Pac. Rep. 27. Very many of the cases where this question has arisen are cases where a deficiency judgment has been sustained against a grantee, who assumed and promised to pay an existing incumbrance upon land conveyed to him. The amount thus assumed having been deducted from the purchase price, in the payment to the grantor direct, the courts say that it represents a portion of the purchase price due to the grantor, and which the grantee has promised to pay in a particular manner, and in paying it he pays his own debt as well as that of the grantor. But this could not be if his own debt were extinguished by the promise. In this case $3,000 of the purchase money was not paid to the grantor direct, but was to be paid to another party; but it nevertheless represented purchase money and Lewis E. Booker's indebtedness to respondent. But it is urged that, as the third party might enforce this promise as against Booker, necessarily respondent cannot enforce it, as he cannot be liable to two distinct parties on the same obligation. This needs some qualification. Until the time for performance has arrived, of course respondent could not sue for the debt, because he had agreed to wait until that time. But thereafter, if the debt be not paid in fact, we know of no principle that would prevent his enforcing it. While the third party may adopt and enforce the promise, it is under no obligation to do so. It is under no obligation to, ·in any manner, recognize the agreement between respondent and Booker. It may lawfully refuse to accept performance from Booker. Should it do so, or, as suggested in *Pierce* v. *Plumb,* 74 Ill. 326, should it

generously forgive respondent's debt, what, upon appellants' theory, would be respondent's position? He could not sue for breach of contract, because Booker was ready to perform. He could not sue upon the original indebtedness, because that was entinguished by the promise. The vendee would escape payment entirely. Of course, that is not the law. In *Steene* v. *Aylesworth,* 18 Conn. 244, the syllabus reads: "Where a promise is made to one person for the benefit of another, a suit may be maintained thereon either by the promisee or the person for whose benefit the promise is made." *Locke* v. *Homer,* 131 Mass. 93, is a very instructive case. The grantors sold the property for $6,000, of which amount $2,000 was paid direct to the grantors, and $4,000 was to be paid by the assumption of grantor's mortgage debt on the premises. The mortgage not being paid, the property was sold thereunder for less than $1,000. Thereafter the grantors, without paying the balance of the debt, brought suit against the grantee to recover such balance, and the action was sustained. See, also, *Farnsworth* v. *Boardman,* Id. 115; *Reed* v. *Paul,* Id. 129; *Pierce* v. *Plumb,* 74 Ill. 326. But it is said that the third party may have notified the promisee of its intention to enforce the promise against him, even after the time for performance had passed, and that hence he could not safely pay to the original promisor. It is a sufficient answer to say· that he can be required to pay but once, and he can always protect himself by an interpleader. We do not hold that mere notice by the third party in any instance would be sufficient to charge the promisee in case he thereafter dealt with the promisor. It is urged, however, that in this case the third party has in ·fact undertaken to enforce the promise. It is true that the receiver of the Grand Forks National Bank undertook to intervene in this case. *Bray* v. *Booker,* 6 N. D. 526, 72 N. W. Rep. 933. But the complaint in intervention in that case manifests no intention to hold Lewis E. Booker upon his promise to pay to the bank. It asks judgment against the respondent, Bray, for the amount of his renewal note to the bank, and asks that a vendor's lien be established upon the realty for the amount of such judgment. This was asked upon the theory that the bank had the right to be subrogated to any rights respondent might have to a vendor's lien, because respondent had agreed that a· certain portion of the purchase price might be paid by Booker to the bank. Had such lien been established, it would have been inimical to the interests of Katie E. Booker, but there was nothing whatever asked by the receiver as against Lewis E. Booker. Nor does the entire record in the case disclose that the bank or its receiver has at any time, or in any manner, notified Booker that it would enforce his promise made for its benefit. It is proper here to say that the only question before us upon the former appeal related to the right of the receiver to intervene. It was not the intention of the Court to say anything affecting the reciprocal rights and obligations of respondent and Lewis E. Booker. Any language in our former opinion having that tendency is obiter merely.

We reach the conclusion that the promise made by Lewis E. Booker to pay a portion of the purchase money to the Grand Forks National Bank did not, without performance, extinguish his debt to respondent, and that, the time for performance having passed, respondent may bring his action upon the original purchase-price indebtedness that Booker promised to pay to the bank, and in such action he will be entitled to have a vendor's lien established, and that his right so to do does not depend upon his having paid the bank, so long as his obligation so to do remains outstanding. There are two cases, however, cited by appellant, that seem to be so directly against our holding that we desire to notice them. The first is *Patterson* v. *Edwards,* 29 Miss. 67. In that case a demurrer to the complaint was sustained. The complaint stated that plaintiff "sold and conveyed certain lots in Yazoo City to Richard Edwards, for the consideration of some $10,000 cash, then paid, and that said Edwards would take up and deliver to complainant two certain notes due to the Planters' Bank, and payable the 26th of February, 1840." Edwards failed to pay the notes, and, without paying them, Patterson brought suit for the amount, and sought to establish a vendor's lien upon the lots. The difference between that case and the case at bar is not great, but it is vital. Here the consideration was $8,000 in money. In the case in Mississippi, the consideration was $10,000 in money and the taking up of the notes. In other words, by the express terms of the contract, the promise was made and accepted as a part of the purchase price. The grantor was paid by the promise, and no debt for purchase money could remain, only an action for damages for breach of promise. The second case is *Chapman* v. *Beardsley,* 31 Conn. 115. There we find the same condition that existed in *Patterson* v. *Edwards,* supra. So far as the record shows, no price whatever was fixed upon the realty. The sole consideration was the assumption of certain claims against the grantor. The Court say that the grantee did not hold subject to any vendor's lien in favor of the vendor, because no *money* was to be paid to *him;* that the consideration was the *assumption* of other claims (we use the Court's italics); and they cite, as the only authority upon which they base their decision, *Meigs* v. *Dimock,* 6 Conn. 458, where the consideration for the conveyance was an agreement for support. We do not think either of these cases, properly construed, is at variance with our conclusions herein.

We must not be understood as deciding in this case that the promise made by Lewis E. Booker to respondent to pay a certain portion of the purchase price to the bank, in extinguishment of respondent's debt, is a contract that comes within the provisions of our Code, as having been "made expressly for the benefit of a third person." We assume in this case, against respondent's interests, that the promise comes within the statute.

The point is made that respondent intentionally waived his right to a vendor's lien. We do not so understand the facts. Of course, the lien may be waived by any act or declaration of the vendor

clearly evincing a manifest intention so to do. But the circumstances must certainly be exceptional if a waiver can ever be inferred from his silence, and that is all we have in this case, except the fact that the vendor executed the deed after Mr. Booker had expressly refused to give a mortgage on the property, and after he had stated that he desired to turn the property over to Mrs. Booker free from all incumbrances. But these were simply declarations of the vendee, to which some affirmative response must have been made by the vendor before any of his rights can be concluded thereby. Nor did taking collateral security for the payment of a portion of the purchase price work a waiver by the vendor of a lien for the part not so secured. It is true that it has been held that taking security for a portion of the purchase price evinced an intention to waive the security for the balance. See Jones, Liens, § 1087; *Orrick* v. *Durham,* 79 Mo. 174, and cases there cited. But our statute (section 4830, Rev. Codes) settles the matter in this state. It gives the vendor a lien "for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer."

One further point is made to the effect that Katie E. Booker was a bona fide purchaser for value, without notice that the purchase price was unpaid. This we regard as untenable. Mrs. Booker took her title direct from the respondent. She knew that her husband had acted as her agent in purchasing the property. She testifies: "I never had any talk myself with Mr. Bray in regard to deeding the property to me. I never had any negotiations at all myself. All the business was done by my husband with Mr. Bray. During the time of the negotiations between my husband and Mr. Bray, Mr. Booker told me nothing in regard to those negotiations, only that he was going to buy, and was dealing with Mr. Bray. I intrusted the whole matter to Mr. Booker, and relied on him, and on what he told me in regard to it." It was a clear case of agency. The knowledge of the agent was the knowledge of the principal. In law, Mrs. Booker is charged with a knowledge of all the details of the transaction.

We reach the same conclusions that were reached by the trial court, and the judgment of that court is made the judgment of this Court, and is in all things affirmed. All concur.

### ON REHEARING.

A rehearing was ordered in this case upon the petition of defendants and intervener, and an argument has been presented, two points in which require discussion. We notice, first, the point that, conceding that defendant Lewis E. Booker was the real purchaser, yet plaintiff waived his vendor's lien. This claim is based upon the proposition stated in the original opinion that Mr. Booker refused to mortgage the land, and stated to Mr. Bray, during the negotiations, that he desired to turn the property over to Mrs. Booker free of all incumbrances. We used that language because we desired

to give the defendants the benefit of all that they could claim from their testimony. Mr. Booker stated in his evidence that during the negotiations, and when he refused to give a mortgage to secure the note for $5,000, he gave, as one of his reasons therefor, that he desired to turn the property over to Mrs. Booker free from incumbrances. Regarding this statement as necessary, in connection with Bray's subsequent execution of the deed, to constitute a waiver of a vendor's lien, and the burden being upon defendants to establish such waiver, the statement does not stand proven, as will appear by the testimony that we shall quote upon the next point. But, regarding the statement as proven, learned counsel insist that where, to the knowledge of the grantor, real property is purchased for the purpose of transferring it to a third party, free and clear of incumbrances, by giving a deed under such circumstances the original grantor waives his right to insist upon a vendor's lien. Counsel cite, in support of this position, *Sullivan* v. *Ferguson,* 40 Mo. 79; *Christy* v. *McKee,* 94 Mo. 241, 6 S. W. Rep. 656; and *Railway Co.* v. *Stewart,* 51 Ark. 285, 10 S. W. Rep. 767. Counsel mistake these authorities. In each case the Court was discussing the old mooted question (happily settled by statute in this state) whether or not taking the obligation of a third party was a waiver of the lien, and it was held that, where property was purchased in the manner and for the purpose stated by counsel in this case, taking the obligation of a third party was a waiver of the lien. Counsel also cite two Alabama cases,—*Hubbard* v. *Buck,* 98 Ala. 440, 13 So. Rep. 364, and *Scheerer* v. *Agee,* 106 Ala. 139, 17 So. Rep. 610. These authorities would, to some extent, support the position of counsel, if it were true here, as it is in Alabama, and in all jurisdictions where the matter is not fixed by statute, that a vendor's lien is a mere creation of equity, given by reason of the injustice of permitting one to enjoy property without paying therefor, and never allowed where the facts surrounding the transfer make it clear that the vendor does not intend to rely upon a vendor's lien. The taking of other security was such persuasive evidence that the vendor did not intend to rely upon his lien that, after much hesitation by the courts, the rule finally became nearly generally established, in the absence of statutes, that taking other security, if only the personal obligation of a responsible party, was a clear manifestation of an intent not to rely upon a vendor's lien. No doubt courts might regard other facts as manifesting the same intent, and where a vendee purchased for a certain declared object, which would be entirely subverted by the enforcement of a lien, it might not be inconsistent for a court to declare that the vendor did not intend to rely upon a lien.

But the cases that discuss the existence or nonexistence of a vendor's lien from the standpoint of the vendor's intentions have no application in this state. Here it is a question of the existence or nonexistence of the conditions prescribed by the statute. If those conditions exist,—and confessedly, for the purpose of this point in

this case, they do exist,—then the lien exists every time, and the law knows no implied provisos. Had the legislature intended that the vendor should have a lien for unpaid and unsecured purchase price in all cases unless the vendee, to the vendor's knowledge, desired to transfer the property to a third party free from incumbrances the statute would have so declared. But there is no such limitation. The statutory right is absolute, and no court can ingraft implied limitations without throwing us back upon the old equity doctrine of intention. Of course, since the lien is for the benefit of the vendor, he may, as we said in the original opinion, waive the same. But such waiver must be by unmistakable words or acts. The law cannot imply it without destroying itself. And certainly the act of giving the deed—the very act which perfects the right to the lien— cannot be regarded as an express waiver of the lien. It is suggested that where the vendee refuses to give a mortgage, and states that he desires to transfer the property free from incumbrances, if then the vendor is permitted to enforce a lien upon the property it works a fraud upon the vendee. But this is not correct. There can be no legal fraud. If the purchase price be not paid or secured, the statute creates the lien. It exists as certainly as if the grantee had executed a mortgage. This he is bound to know. The grantor may or may not rely upon or enforce it, but it exists. If the grantee wishes to avoid it, he must secure an unmistakable waiver.

But learned counsel rely more especially upon another point. In the original argument, it was claimed that Mrs. Booker occupied the position of an innocent purchaser for value, and that no lien could be enforced as against her. We held, however, that, in making the purchase, Mr. Booker, with the knowledge and consent of his wife, acted as her agent, and that she was chargeable with knowledge of the fact that the purchase money had not been paid. Counsel now say that this is correct, and that, since Mr. Booker was the agent and Mrs. Booker was the principal, she, and not he, was the "buyer," within the terms of the statute, and, as plaintiff accepted Mr. Booker's obligations for the payment of the purchase price, that he accepted security "other than the personal obligation of the buyer," and hence, under the statute, as well as under the general current of authority in the absence of statute, no vendor's lien could exist. This contention certainly has the merit of great plausibility, but it is unsound, under the facts of this case. In the original opinion, we were fixing the relations between Mr. and Mrs. Booker. It was there contended—and it was the only ground upon which a claim that she was an innocent purchaser could be based—that in effect, under the facts, she was a purchaser from Mr. Booker; that he purchased from plaintiff, and she purchased from him. We held, under the clear language of her testimony, that she did not occupy the position of a purchaser from her husband, but as to her he acted as an agent in the purchase of the property. But whether, as between plaintiff and Booker, the latter acted, or

claimed to act, as agent for his wife, or was so regarded or treated by either party, is an entirely different question. This transaction must be viewed as the parties viewed it when it was made. Counsel, in their petition for a rehearing, very properly say: "If this were a case where the husband were the real purchaser, and merely had the title put in his wife's name for convenience, then, accepting his note would not be accepting the note of a third person, for in the supposed case he would be the buyer." We think this concession is fatal to counsel's position. We notice, first, that there is absolutely nothing in the evidence tending to show that plaintiff knew that Mr. Booker was under any obligations, contractual or moral, to purchase the property for his wife, or that he knew that Mr. Booker was in any manner indebted to his wife, or had in his possession any money or property belonging to his wife. Mr. Booker at no time stated or intimated that his wife was purchasing the realty through him as her agent. At no time did he pretend to bind her or create any liability upon her part. Granting —what is not proved—that he said, during the negotiations, that he wished "to turn the property over to his wife free from incumbrances," that language did not imply that he contemplated an actual sale or transfer to his wife for a valuable consideration moving from her. Rather, it implied that, as a business man, he did not wish to have his home constantly exposed to the risk of business fluctuations, and he therefore proposed to get it free from incumbrances, and place the title in the name of his wife. Certainly, the plaintiff was warranted in so understanding it. But the testimony of the parties leaves no doubt as to who was the real buyer. Mr. Booker testified: "I am one of the defendants in this action. I negotiated a deal with Mr. Bray, the plaintiff, in September, 1895, by which I took the house and certain bank stock belonging to him, and executed the note (Exhibit B) at that time. I think I purchased eighty-three shares of bank stock from Mr. Bray at that time. It was eighty-two or eighty-three shares of the Grand Forks National Bank stock. The contract between myself and Mr. Bray, on the 30th of September, 1895, by which this house and bank stock was transferred to me, was: I took the bank stock and six hundred dollars' worth of furniture (the furniture was taken at fifty cents on the invoice price; the invoice was twelve hundred dollars, and at fifty cents, made it six hundred dollars) as part of this consideration. Then I was to take his bank stock and his house, and pay him five thousand dollars, and assume a note he had given to the Security Trust Company and his obligations at the Grand Forks National Bank as consideration. That was the contract." It is not claimed that the furniture and bank stock were not purchased by Mr. Booker; yet it was all in one contract, and he reiterates that he took the house, and that it was transferred to him. Touching the same point, the plaintiff testified as follows: "The talk was I was to make the deal if I could negotiate the note. He knew I was trying to negotiate the note. I don't think there was talk at

that time about the circumstance of the deed being made to Mrs. Booker, nor until after the deal was all closed, and I started to make out the deed. I asked him how he wanted the deed made, and he said to her. His wife was never mentioned,—never talked of her until after the transaction had been all completed." Viewed from the standpoint of the vendor, if this were not a case where the real buyer had the title made to another person for his own convenience, then it is impossible to conceive of such a case. Nor do we think the vendor's rights can be destroyed because of the existence of certain facts, hidden away from him, which made it obligatory upon Mr. Booker to purchase that home for his wife. We may add that it does not appear in this case that any obligation of Mr. Booker to his wife has ever been satisfied, in whole or in part, by reason of the transfer of the title to her. So far as we know, that obligation is in full force.

It is true, we think, that the principle announced in *Andrus* v. *Coleman,* 82 Ill. 26, would defeat the lien in this case. In that case the Court seems to recognize the doctrine that, where the vendor makes the deed to the wife, that fact alone is conclusive upon him that the wife was the real purchaser, and that her husband simply acted as her agent in the transaction. If this be true, then it must follow that a purchaser never could have the title placed in a third party for his own convenience, because the deed to such third party would be conclusive against the vendor that such third party was the real purchaser, and the party who carried forward the negotiations, and became responsible for the purchase price, was only the agent for the third party. But, if counsel in this case are correct in their concession, then the law must be different, and we think counsel are correct. The Supreme Court of Mississippi had this question under discussion in *Davis* v. *Pearson,* 44 Miss. 508. In that jurisdiction the lien is not given by statute, and the court recognized the general rule that taking the obligation of a third party was conclusive evidence of a waiver of the lien. But the particular point was whether or not the lien was waived when the husband negotiated the purchase and gave his obligations for the purchase price, but had the title conveyed to his wife. The Court said: "We think the principle deducible from the cases is that if the husband negotiates a purchase of land, and gives his written promise to pay the price, but has the title made to the wife, that the lien will be implied." If, with those conditions existing, the lien will be implied where it is not given by statute, certainly the existence of the same conditions will not destroy the lien where it is given by statute, while the same rule relative to taking security exists in both cases. The case of *Duke* v. *Balme,* 16 Minn. 306 (Gil. 270), has many points in common with this case. There the wife had placed a certain sum of money belonging to her separate estate in her husband's hands. The conditions were much the same as here. The husband might use the money as his own, but must ultimately account to his wife for it, or transfer to her

any land he might purchase with it. He used a portion of it to purchase three certain land warrants. Subsequently he purchased from the plaintiff a tract of land, and gave in payment therefor the three land warrants, with an express warranty of title thereto in himself. He then transferred the land to his wife at her request, and at an agreed price, in part satisfaction for the money advanced to him by her. It transpired that the husband acquired no title to the land warrants by reason of the fact that a prior assignment thereof had been forged. Of course, he transferred no title to plaintiff. Plaintiff held his express warranty of title, but he elected to treat the purchase price of the land as unpaid, and brought the action to enforce a vendor's lien thereon against both husband and wife. The Court sustained the action, and, in answer to the claim that the wife was an innocent purchaser, held that the husband was the agent for the wife in making the purchase. The facts in that case certainly made a much stronger case against the enforcement of the lien than has been made in the case at bar. We adhere to our original opinion.

(79 N. W. Rep. 293.)