Joe G. KOPPINGER, Plaintiff and Respondent,

v.

IMPLEMENT DEALERS MUTUAL INSURANCE CO., a Corporation, Defendant and Appellant.

No. 7926.

Supreme Court of North Dakota.

May 23, 1963.

Rehearing Denied June 13, 1963.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiff and respondent.

Zuger, Zuger & Bucklin, Bismarck, for defendant and appellant.

MORRIS, Chief Justice (on reassignment).

This opinion is written after reargument. On October 4, 1958, the plaintiff and respondent, Joe G. Koppinger was the owner of Lot Six (6), Block Four (4), Gabbert's First Addition, New England, North Dakota, on which was situated a one story family dwelling. On that date, the defendant and appellant, Implement Dealers

Mutual Ins. Co., issued a policy insuring the dwelling "against all direct loss by fire" in the sum of $4,000, beginning on October 4, 1958, and expiring on October 4, 1963. The premium for the first year was paid by Koppinger, the named insured. On March 4, 1959, Koppinger sold the premises to Douglas G. Candee and Lyla M. Candee for $3,500, and on that day issued a deed to the purchasers. The Candees paid $2,000 cash and gave to Koppinger their note for $1,500 dated March 4, 1959, due July 1, 1961, payable in monthly installments of not less than $25 each. On March 23, 1959, the Candees paid $25, which was endorsed on the note, leaving a balance due of $1,475. On March 29, 1959, the dwelling was severely damaged by fire. The defendant insurance company was notified of the fire through its agent and shortly thereafter an insurance adjustor, Robert Peske, appeared on the scene and negotiated an adjustment with Mr. Koppinger and Mr. Candee, both of whom signed a sworn statement in proof of loss on April 9, 1959. The loss was adjusted at $2,339.93, which was the amount claimed in the proof. A second proof of loss for the same amount was later made out and sent to the insurance company by an attorney. The defendant company notified Koppinger about June 10, 1959, that it rejected the claim on the ground that there was no insurance coverage on the property because of the sale to the Candees.

Koppinger brought this action in August, 1959, upon a complaint which alleged the contract and policy of insurance on the property, the loss by fire, and the amount thereof. The insurance company answered and alleged that the complaint fails to state a claim upon which relief can be granted. It also alleged the sale of the property by Koppinger; that he did not own the property at the time of the alleged loss, and had no insurable interest therein. The case was tried to the court without a jury. The court determined that Koppinger had a vendor's lien on the property for $1,475, which constituted an insurable interest.

This was the amount unpaid on the note from the Candees to the Koppingers at the time of the fire. The evidence shows that, between the time of the fire and the time of trial, the Candees paid $150, which appears by endorsements on the note. The judgment provides that "the plaintiff shall hold the sum of One Hundred Fifty Dollars ($150.00) when the above mentioned amount is received from the defendant, as trustee for the Candees; that the promissory note held by the plaintiff and evidencing the amount of unpaid purchase price of the above premises shall be deemed satisfied when the amount of One Thousand Four Hundred Seventy-Nine Dollars ($1,-479.00) shall be received from said defendant; * * *" The latter figure includes four dollars interest. The insurance company appeals and demands a trial anew.

The prime issue is whether, at the time of the fire, the insurance policy was in effect. That, in turn, depends on whether Koppinger, after the sale to the Candees, had an insurable interest in the property in question.

A vendor's lien is provided by Section 35-20-01, N.D.C.C., in the following language:

"One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer."

The evidence shows that the Candees, with Koppinger's consent, executed a mortgage and obtained a loan of $2,700 on the premises. It is argued that this act on the vendor's part constituted a waiver of the vendor's lien that completely extinguished it. This is clearly not the case. The effect of the consent was to waive the priority of the vendor's lien so that it became subject to the mortgage. It did not destroy the lien. In an early case, Bray v. Booker, 8 N.D. 347, 79 N.W. 293, this court distinguishes between our statutory lien and

the common law lien of the vendor of real property and uses this pertinent language:

"But the cases that discuss the existence or nonexistence of a vendor's lien from the standpoint of the vendor's intentions have no application in this state. Here it is a question of the existence or nonexistence of the conditions prescribed by the statute. If those conditions exist,—and confessedly, for the purpose of this point in this case, they do exist,—then the lien exists every time, and the law knows no implied provisos. Had the legislature intended that the vendor should have a lien for unpaid and unsecured purchase price in all cases unless the vendee, to the vendor's knowledge, desired to transfer the property to a third party free from incumbrances, the statute would have so declared. But there is no such limitation. The statutory right is absolute, and no court can ingraft implied limitations without throwing us back upon the old equity doctrine of intention. Of course, since the lien is for the benefit of the vendor, he may, as we said in the original opinion, waive the same. But such waiver must be by unmistakable words or acts. The law cannot imply it without destroying itself. And certainly the act of giving the deed—the very act which perfects the right to the lien—cannot be regarded as an express waiver of the lien. It is suggested that where the vendee refuses to give a mortgage, and states that he desires to transfer the property free from encumbrances, if then the vendor is permitted to enforce a lien upon the property it works a fraud upon the vendee. But this is not correct. There can be no legal fraud. If the purchase price be not paid or secured, the statute creates the lien. It exists as certainly as if the grantee had executed a mortgage. This he is bound to know. The grantor may or may not rely upon or enforce it, but it exists. If the grantee wishes to avoid it, he must secure an unmistakable waiver."

At the time the sale was made, there remained of the purchase price the sum of $1,500 that the buyer was obligated to pay the vendor. This sum was unsecured and evidenced by the personal note of the buyer. Under the provisions of Section 35–20–01, N.D.C.C., the vendor had a statutory lien on the property sold for that amount. The lien was not extinguished by the mortgage given by the buyer with the consent of the vendor although the priority of the lien was waived as to that mortgage. At the time of the fire, the Candees had paid $25 on the note. The debt secured by the vendor's lien was reduced by that amount, leaving a balance of $1,475 still unpaid on the purchase price.

We come now to the matter of insurance. At the time the policy became effective, Koppinger was the owner of the property and as such had an insurable interest therein. He became the named insured in a valid insurance policy. This policy did not describe or restrict the interest of the insured, nor did it contain a provision against sale or alienation.

Section 26–02–05, N.D.C.C., provides that:

"An interest insured must exist when the insurance takes effect and when the loss occurs but need not exist in the meantime."

Section 26–02–06, N.D.C.C., defines insurable interest:

"Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might damnify directly the insured is an insurable interest, and may consist in:

"1. An existing interest;

"2. An inchoate interest founded on an existing interest; or

"3. An expectancy coupled with an existing interest in that out of which the expectancy arises.'"

In Richards on Insurance, 5th ed., Section 76, p. 343, it is said:

"A vendor of property has an insurable interest in property sold so long as he has any interest therein, and does not cease to have an insurable interest until all risk of loss has come to rest upon the purchaser so that no injury will result to the vendor upon the loss or destruction of the property."

A vendor of real property in whose favor a vendor's lien exists has an insurable interest in the property. 4 Appleman, Ins. Law and Practice, Sec. 2181; Ann. 10 L.Ed. 1044; 29 Am.Jur., Insurance, Sec. 453; 44 C.J.S., Insurance, § 188a; Cooley's Briefs on Insurance, 2d ed., p. 259; Wohlt v. Farmers' Home Hail, Tornado & Cyclone Ins. Co., 206 Wis. 35, 238 N.W. 809; Bowman v. Hartford Fire Ins. Co., 113 W.Va. 784, 169 S.E. 443; Fire Ass'n of Philadelphia v. Ward, 130 W.Va. 200, 42 S.E.2d 713; Mahan v. Home Ins. Co., 205 Mo.App. 592, 226 S.W. 593; Farmers' Mut. Fire Ins. Ass'n v. Hodges, 142 Ark. 577, 219 S.W. 13. In the latter case it is said:

"Whether appellee owned an insurable interest in the Redding house when destroyed is one of law, because the undisputed evidence is he sold and conveyed it to Shafer before the fire. In making the sale, however, appellee reserved a vendor's lien to secure the unpaid notes evidencing the purchase money. The owner of a lien on property necessarily owns an insurable interest therein, where there is no provision in the contract providing that the insurer shall own the exclusive or unconditional title in the property."

We reach the conclusion that the vendor, Koppinger, had an insurable interest in the property by virtue of his statutory vendor's lien to the extent of $1,475 at the time of the loss by fire. The fact that his interest in the property was less at the time of fire than it was at the time the policy of insurance was issued to him does not bar his recovery. 44 C.J.S., Insurance, § 196. It was an existing insurable interest within the meaning of Section 26-02-06, N.D.C.C.

Paragraph 7 of Section 26-03-40 provides:

"The standard form of policy herein provided for shall be construed as an interest policy and shall be so construed as to at all times protect the interest, whatever it may be, of any named insured. Provided, however, that a five day grace period shall be allowed after the execution of any written instrument transferring interest in insured property during which full protection shall be granted under the terms of the policy."

At the time the loss occurred, the policy was valid and in effect to the extent of the purchase price then unpaid, which was the sum of $1,475. The plaintiff suffered a direct loss by fire of this amount. It is the amount for which the trial court rendered judgment against the insurer.

At the time of the fire, the contract was no longer executory. The vendor had become a lienor and the vendees had become lienees. Their situation was then somewhat like that of a mortgagor and mortgagee where the mortgagee has taken out insurance covering his interest in the mortgaged property.

In Couch on Insurance, 2d, Section 29:75, we find that:

"The rights of the mortgagee, if any, to the proceeds of the insurance are determined and fixed as of the time of the loss. Accordingly, the extinguishment of the mortgage subsequent to the loss does not relieve the insurer of liability to the mortgagee, as the latter's right against the insurer was fixed as of the time of the loss."

In 45 C.J.S., Insurance, § 917a, it is said:

"In case of partial loss, the insurer is liable, under the ordinary policy, for

the full amount of the loss, up to the amount of insurance specified in the policy; in the absence of different provisions, the measure of recovery is the difference between the values of the property immediately before and immediately after the fire."

And under Section 919b, it is said:

"Under a fire insurance policy covering mortgaged property made payable only to the mortgagor, insured may recover the full amount of the loss, within the limits of the policy, regardless of the mortgage indebtedness. Under a policy issued the mortgagee on his own interest only, insured may recover only the amount of his debt within the limits of the policy amount."

And it is further said:

"[H]is right of recovery is not dependent on the sufficiency or insufficiency of the mortgage security after the fire, and hence is not affected by the fact that the property not destroyed equals the mortgage debt, or by the fact that the mortgagor has restored the damaged property to as good a condition as it was in before the loss."

■ The policy contains an option permitting the company to repair, rebuild or replace property destroyed or damaged within a reasonable time "on giving notice of its intention so to do within thirty days after receipt of the proof of loss herein required." According to the testimony given by Mr. Candee at the trial, after the proof of loss was signed the adjuster told him that he could go ahead and make repairs, and that after making major repairs, the Candees moved into the house about May 30. The company rejected the proof of loss and denied the claim about June 10, 1959. It does not appear that the company at any time gave notice of its intention to repair the property. Summons was served on August 12, 1959. The answer filed by the company in this case makes no mention of an election to repair. The defenses pleaded were a general denial and an allega-tion that at the time of the alleged loss the plaintiff had no insurable interest in the property.

The insurer not only failed to give the notice of intention to rebuild required by the policy, but its conduct throughout indicates no intention, at any time, of rebuilding or restoring the property. Its defense was a denial of liability and the present contention appears to be an afterthought. We conclude that the insurer did not make an effective election to repair or rebuild.

■ The measure of recovery of the insured is the value of his interest in the property at the time of the loss not exceeding the amount of coverage provided by the policy. Pink v. Smith, 281 Mich. 107, 274 N.W. 727; Alexandra Restaurant, Inc. v. New Hampshire Insurance Co., 272 App. Div. 346, 71 N.Y.S.2d 515; affirmed 297 N.Y. 858, 79 N.E.2d 268; Foster v. Equitable Mutual Fire Insurance Co., 2 Gray 216, 68 Mass. 216; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 226 F.2d 641, 53 A.L.R.2d 1376. In this case the interest of the insured was the amount of his vendor's lien for the unpaid purchase price at the time of the fire.

■ The trial court properly rendered judgment in favor of the plaintiff for the amount of the unpaid purchase price at the time of the loss. However, the court did not stop with the rendition of judgment in favor of the plaintiff, but further provided that upon receipt of the amount of the unpaid purchase price from the defendant, the note given by the Candees to the insured should be deemed satisfied and that the plaintiff should hold the sum of $150, which the Candees had paid to the insured after the fire, as trustee for the Candees. The insurer contends that these provisions in the judgment are erroneous and if permitted to stand would destroy the insurer's right of subrogation which it contends is provided in the insurance contract.

The Candees are not parties to this action. The right of subrogation for which

the insurer contends is a right against the Candees. Since they are not parties to the action the question of whether or not the right of subrogation exists against them cannot be determined here. The provision in the judgment for disposition of the proceeds in favor of the Candees has the effect of determining the insurer's right of subrogation contrary to the claimed rights of the insured. Right of subrogation was not an issue in this case. It appears to be a justiciable issue and its determination must be made in an action to which all of the persons interested therein are parties. The judgment appealed from is therefore modified by striking therefrom the provisions controlling the disposition by the plaintiff of the proceeds of the judgment. As so modified the judgment is affirmed.

STRUTZ, TEIGEN, BURKE and ERICKSTAD, JJ., concur.