Bullamore and others, Respondents, vs. Baker and wife, Appellants.

*June 2—September 15, 1936.*

For the appellants there were briefs by *Baker, Juliani & Baker* of Kenosha, attorneys, and *Harold M. Wilkie* of Madison of counsel, and oral argument by *Mr. Wilkie* and *Mr. W. E. Torkelson* of Madison.

For the respondents there was a brief by *Hammond & Jones* of Kenosha, and oral argument by *Walter W. Hammond*.

The following opinion was filed June 22, 1936:

FAIRCHILD, J.   The appellant, Robert V. Baker, for some years prior to the transaction here involved, was the attorney for Einar Dahl, the husband of Petra Dahl.   Dahl became involved in financial difficulties.   He had a one-third interest in lots 11 and 12, described in the complaint.   This interest was transferred to appellant Baker, who also acquired the interest of other owners.   The legal title to the lots was acquired by appellant in 1923, and the record shows title to all of said premises in appellant until 1925.   Different portions, at different times, were conveyed by appellant to Mrs. Dahl.   There is no question but that appellant has money due him from Dahl.

Appellant's first proposition, presented by this record, is that he acquired the property in 1923 as a *bona fide* purchaser.   The respondent insists that the arrangement under which appellant took title was made for the purpose of giving security for the debt owed appellant by Einar Dahl.   The referee concluded that appellant was a *bona fide* purchaser; the circuit court, upon reviewing the referee's report, concluded that findings of fact upon which that conclusion was based, were against the great weight and clear preponderance of the evidence.   There is much in the record to sustain the trial court's conclusion on this matter.   After appellant received $5,300 from the city of Kenosha for a portion of the property in a street widening project, he gave Mrs. Dahl a deed to a part of lot 11, and credited the sum received from the city to Einar Dahl's account.   Dahl, without consulting Baker, did alteration work on buildings standing on the lots. The expense of these operations was paid by Dahl.   He

secured a mortgage on the property from Bullamore. In conversations with Bullamore at various times, appellant stated that he held the title to the property, and that it was "certainly good security for every dollar and much more than was coming to me." Appellant gave Dahl credit for $1,150 from rental received from a portion of the property and stated that he did it, ". . . because of the situation that I was in with Dahl and what I voluntarily did for him. . . ." But it is unnecessary to treat with this proposition further, because of the conclusion reached upon another and controlling question.

If it be established that appellant was at any time entitled to benefits arising under a lien for the unpaid purchase price when, in 1927, he was about to deed the remainder of the property to Mrs. Dahl, did he waive or relinquish such right? The trial court, upon this point, concluded that appellant released any claim under such lien right, and that the lien for advances to be made by respondent Bullamore was to be superior to any claim on the part of Baker. In his memorandum decision the trial court said:

"I am of the opinion and find that even if Mr. Baker is to be considered the absolute owner of the property at the time he made the conveyance in February, 1927, to Petra Dahl, and that the amount owing from Einar Dahl to him was to be considered the purchase price to be paid him for the premises conveyed that by his agreeing that the unpaid portion of the purchase price was to be paid to him by Einar Dahl from the avails of a bond issue to be obtained by Dahl upon the premises that he thereby waived any vendor's lien on said premises."

While it is unnecessary, in order to have a vendor's lien, to use words expressly establishing such a lien on land, still, an agreement by the vendor that he will postpone payment of the balance due him until moneys are provided by the placing of a later mortgage upon the land, or by the refinancing of the building project, would necessarily be a waiver of any right

in favor of priority of liens against the one so induced to advance money to start the enterprise in reliance upon the property as security therefor. By that arrangement, the vendor either waives or postpones the attachment of his lien. The appellant in this case, under the undisputed evidence, cannot be permitted to assert a lien prior to the moneys advanced for the purpose of starting the construction work and increasing the value of the premises concerning which all were negotiating. The whole transaction was carried on and matured with the idea that moneys from the outside would be brought in to enhance the value of the real estate, and to put it upon a potential earning basis so that a bond issue might be floated. The negotiations contemplated a plan in the carrying out of which a building was to be erected. Dahl was in the construction business, was anxious to get the work started, and was urging the development of the scheme. Everyone dealing in the transaction knew that in order to bring about the desired results, Bullamore would have to have the property free from as many liens as it was possible to clear it of. The $4,000 mentioned in the statement of facts was raised and paid to appellant for the express purpose of securing the deed which placed the property in the control of the Dahls. When that deed was delivered by appellant to Bullamore, the appellant then represented that the title was good in Mrs. Dahl, subject to two certain mortgages which appellant did not control. This was followed by the advancing by respondent Bullamore of sums of money agreed to be furnished by him with the understanding that appellant Baker would not be paid until a bond issue could be arranged for by pledging the improved property as security.

It was later found that material and labor used upon the premises had not been paid for in full, and that in order to protect his interest, respondent would have to satisfy the liens which were thus accumulating. Baker, by deeding to Mrs. Dahl, enabled Dahl to give the mortgages to respondent

Bullamore, and enabled the Dahls to control the property. Under this state of affairs, the liens already spoken of accumulated. Appellant, by his action, waived the priority of any lien that might otherwise have accrued to him, in favor of the loan made by Bullamore, and prevented himself from asserting any such lien against materialmen and mechanics contributing to the construction of the building, their standing being equivalent to that of an innocent purchaser without notice. There was no written memorandum to offset or overcome the facts as here detailed. It is conceded, and the trial court found, that the alleged agreement put forth on the part of appellant, that respondent Bullamore agree to pay the amount due Baker from Einar Dahl, was not evidenced by any writing.

Considerable confusion may be found in the cases as to the theory and effect of the implied equitable lien of a vendor who has made an absolute conveyance, but there does not seem to be much cause for hesitation in reaching a conclusion as to the effect of a vendor's participation in acts which induce another to invest his money with the expectation that the vendor intended to waive his rights to any such lien. Courts of chancery recognized the right for the purpose of protecting the very general equity that a purchaser shall not enjoy the property purchased "with immunity from his agreement to pay therefor." 3 Pomeroy, Eq. Jur. § 1249; *Halvorsen v. Halvorsen,* 120 Wis. 52, 97 N. W. 494. The case of *Larscheid v. Kittell,* 142 Wis. 172, 125 N. W. 442, treated with this right of the vendor of land to a lien thereon, and it was there decided that in as much as the right to such a lien is only recognized "under the broadest of equity powers and for the purpose of promoting equity in excess of legal rights, courts will not enforce it to the extent of doing inequity to others, nor in cases where the conduct of the seller has been such as to lead others to adopt a position upon the assumed

absence of any such right so that they will suffer if it is asserted and sustained." We are of the opinion that the circuit court correctly ruled that the finding of the referee, that the appellant had not waived his rights arising under a vendor's lien, was against the great weight and clear preponderance of the evidence, and that the evidence does sustain the finding that such vendor's lien, if appellant ever had any, was waived and cannot be availed of as against the respondent. It follows that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on September 15, 1936.