Opinion by
Mr. Chief Justice Moore.
Plaintiff in error will be referred to as Western, and defendant in error as M.O.D. or the plaintiff.
M.O.D. filed an action in the trial court against Western seeking to foreclose an alleged vendor’s lien on twenty-seven building sites located in Arvada, Colorado. It asked for entry of judgment against Western for the sum of $2,700 allegedly due on each of the twenty-seven tracts of land as the unpaid purchase price thereof, as provided by an agreement between the parties and Symphony Homes, Inc. under which title to each lot was conveyed by M.O.D. to Symphony Homes, Inc. The trial court entered judgment as prayed for by the plaintiff, and adjudged that the vendor’s lien claimed by M.O.D. was entitled to priority over any interest of Western.
At the outset of the events giving rise to this controversy, M.O.D. was the owner of a large number of building sites in the area in which the twenty-seven tracts here involved were located. Symphony Homes, Inc. was a builder of homes for sale to such purchasers as might be secured. M.O.D. agreed to convey title to building sites to Symphony Homes, Inc., as the latter might require from time to time, for the agreed purchase price of $3,000 for each lot. At the time title was *191 conveyed Symphony was to pay $300 in cash on the purchase price of each lot. Payment of the balance of $2,700 was to be made pursuant to a financing plan which we now consider.
Western made a commitment to Symphony to make construction loans for the building of homes on the lots conveyed by M.O.D. to Symphony, and Western was to have a first deed of trust on each lot securing payment of the construction loans thus made. As between M.O.D. and Symphony, the agreement was in the form of a letter from M.O.D. to Symphony, a pertinent portion of which was as follows:
“We agree that you may purchase any sites in Filing #1, which are unsold at the time you notify us of your desire to purchase same, on the basis of $3,000.00 per site for a period of one year from this date. Such additional sites as you desire will be held for you on the basis of $300.00 down and the balance within one year, or in the event you submit a letter guaranteeing payment by a bank acceptable to M.O.D., Inc., the sites will then be conveyed to you.”
This letter was shown to Western by Symphony and Western explained that as a federalized savings and loan association it could not make the guarantee of payment called for in the letter, and that it must have a first deed of trust if it was to finance the buildings contemplated. Numerous conferences followed at which Symphony, Western, and M.O.D. were represented. It was at all times contemplated that when the several homes were completed the construction loan would be paid off when a home was sold to a purchaser who would then execute an amortized note to Western to be secured by a new first deed of trust.
In order that the plan of financing might proceed in a manner whereby Western would at all times have a first deed of trust and thus be acting within its authorized powers, it was ultimately agreed that it would recognize assignments made by Symphony to M.O.D. *192 with reference to the unpaid balance of $2700 on each home constructed and sold. In this way M.O.D. would be paid for the lots from the proceeds of the final financing of the completed home. A form was prepared which clearly indicates that the assignment was related exclusively to the permanent loan and not to the construction loan. All the dealings of the parties are inconsistent with any other intention.
Symphony began operations. Its plan was to build model homes for display purposes; take orders from purchasers who selected a particular site; and build the home with the aid of the construction loan from Western who then made a commitment to the purchaser for a permanent loan to be made upon completion of the building. Under this plan Symphony erected approximately 150 homes, and in each instance it assigned to M.O.D. a sufficient interest in the loan commitments made by Western to the purchasers of homes to insure payment for the lots from the proceeds of each loan. Symphony became financially involved and Western thereupon cancelled any additional commitments for construction loans, and, in order to protect its interests, took possession of the operations taking place on the twenty-seven sites involved in this action, all of which were in various stages of completion. Additional investments were required of Western to complete the homes erected on these sites.
M.O.D. made demand on Western for payment of the $2,700 yet due to it on each of the twenty-seven lots. Western denied that it was indebted to M.O.D.; denied the existence of a vendor’s lien; and alleged that it held good first trust deeds on all the lots. Trial was to the court which found that Western owed M.O.D. the sum of $72,900; that M.O.D. had a vendor’s lien on each of the lots; and that the trust deeds held by Western were subject to and inferior to the vendor’s lien of M.O.D.
As grounds for reversal of the judgment Western *193 argues that M.O.D. had waived all rights to a vendor’s lien; that Western had not agreed to pay the balance due M.O.D. from the construction loan proceeds; that none of the homes on the twenty-seven lots in question were finished and that sales to the contemplated purchasers thereof were never completed; and that Western had not been able to complete the loans committed to any of the twenty-seven persons who originally authorized Symphony to build a home on one of the twenty-seven sites here involved.
Vendor’s liens are recognized under certain circumstances in this jurisdiction. Mihoover v. Walker, 63 Colo. 22, 164 P.504. The lien may be lost as a result of the conduct of the parties with relation to the transaction, and their declarations' inconsistent with its retention from which an intention to waive the lien may be implied. 55 Am. Jur. 883; Finlayson v. Walker, 64 Idaho 618, 134 P.2d 1069; Koppinger v. Implement Dealers Mutual Ins. Co., 122 N.W.2d 134; Bullamore v. Baker, 222 Wisc. 418, 268 N.W. 214.
In the instant case, the plan agreed to by the parties for financing the homes built on the real estate originally owned by M.O.D. was wholly inconsistent with any intent to preserve a vendor’s lien. M.O.D. was satisfied to accept the financing plan as adequate security for payment of the balance due on the purchase price of the lots. In furtherance of this plan M.O.D. received the full purchase price for more than one hundred lots from the proceeds of the permanent loans made by Western. Under that plan M.O.D. received the full purchase price for approximately 150 lots. As between Western and M.O.D. there could be no vendor’s lien since Western was given a first deed of trust with the full consent of M.O.D. in order that the plan of financing the program might go forward. The evidence in the instant case, as a matter of law, does not support the judgment entered by the trial court.
*194 The judgment is reversed and the cause remanded with directions to dismiss the action.
Mr. Justice McWilliams, Mr. Justice Pringle and Mr. Justice Hodges concur.